ANNA TOLLACKSON, Appellee, v. CITY OF EAGLE GROVE, Appellant.

**MUNICIPAL CORPORATIONS:** Torts—Defects or Obstructions in 1 Streets—Snow and Ice—Negligence. The act of a city in leaving snow upon its streets for a period of four days after it had first melted and then frozen into a rough and irregular condition constitutes negligence. (See Book of Anno., Vol. 1; Sec. 5945, Anno. 168 *et seq.*).

**MUNICIPAL CORPORATIONS:** Torts—Defects or Obstructions in 2 Streets—Knowledge of Danger—Effect. Use of a walk by a pedestrian with knowledge that it is in an unsafe condition is not, in and of itself, sufficient to constitute contributory negligence. (See Book of Anno., Vol. 1, Sec. 5945, Anno. 266 *et seq.*)

**JURY:** Competency of Jurors—Waiver. Incompetency of a juror because of deafness is waived (1) by failing to examine the juror as to such condition, or (2) by so examining him and accepting him without objection. (See Book of Anno., Vol. 1, Sec. 11472, Anno. 15 *et seq.*)

Headnote 1: 43 C. J. pp. 1020, 1023, 1026. Headnote 2: 43 C. J. p. 1082. Headnote 3: 35 C. J. pp. 245, 363, 364, 370, 371.

Headnote 1: 20 L. R. A. (N. S.) 658; 13 R. C. L. 408. Headnote 2: 21 L. R. A. (N. S.) 638; 46 L. R. A. (N. S.) 333; 48 L. R. A. (N. S.) 634; 13 R. C. L. 475.

*Appeal from Wright District Court.*—G. D. THOMPSON, Judge.

APRIL 5, 1927.

Action for damages growing out of the alleged failure of the city to remove ice from its streets, which failure is alleged to have caused plaintiff to fall and receive injuries. Verdict for the plaintiff. From judgment thereon the city appeals.—*Affirmed.*

· *Hobbet & Blue,* for appellant.

*McGrath, Archerd & McGrath,* for appellee.

ALBERT, J.—The city of Eagle Grove is a city of between four and five thousand population. Broadway is one of the principal streets of the city, running east and west, and Lucas Avenue crosses Broadway at right angles in the heart of the business district of said city. On the afternoon of the 10th day of December, 1924, appellee, Anna Tollackson, was on the southeast corner of this intersection, traveling in a westerly direction, crossing Lucas Avenue to the southwest corner of the intersection. When she reached a point about ten feet from the said southwest corner of the intersection, she slipped and fell, receiving a fractured hip. Lucas Avenue is paved, and there is no special crosswalk between these two corners, and foot passengers traveled on the pavement.

1. MUNICIPAL
CORPORATIONS:
torts: defects or
obstructions in
streets: snow
and ice: negli-
gence.

It appears from the evidence that, on Thursday, December 4th, this city and surroundings were enveloped in a severe sleet storm, with some flurries of snow at different times. This storm continued until the forenoon of Saturday following. There is some dispute in the testimony as to whether there was freezing weather between these times, and there was no showing as to the definite hour when the storm ceased. There is some testimony showing that, during this time from Thursday until Saturday night, there was some freezing weather. Other witnesses deny that there was any freezing weather during this time. However this may be, it is agreed by all witnesses that on Sunday the weather grew much colder, and the thermometer was at zero and below; that the sleet and snow that had fallen were frozen solidly, and continued in that condition until after the accident herein referred to had occurred, the weather remaining cold during all of this time.

Appellee's evidence tends to show that these corners were busy corners, and that, as this snow and sleet fell, it turned into a slush. As the general public traveled this crossing, the snow was tramped, and when it froze, this crossing, from one side of the street to the other, was marked with depressions, leaving footprints in the snow and slush which froze in that condition, thus making the crossing rough, irregular, and uneven. Under

the evidence in the case, this was the turning point and battle ground of dispute, the city claiming that, when this snow and slush froze, it was left in a perfectly smooth condition,—in other words, was a smooth glare of ice; and that neither the city nor the traveling public in any way affected the surface of this ice; and, therefore, that the city was not liable. The claim of appellee is, as above stated, that the general public traveling over this particular part of the street made it rough, irregular, and uneven, and that, therefore, the city is liable.

The question of what the actual condition of this street was at the time of the accident being thus in grave dispute, it was a question of fact for the jury. It is equally true that the evidence in the case was sufficient to support the verdict. It is, of course, well settled, under the holdings in this state, that, if this crosswalk was covered with a smooth coating of ice, and was as nature left it, undisturbed by the traveling public thereon, the city would not be liable. Such has been our holding in numerous cases, among which are *Ray v. City of Council Bluffs,* 193 Iowa 620, and *Eickelberg v. City of Waterloo,* 197 Iowa 1219, which are typical cases under this rule. On the other hand, it is equally as well settled that where, by reason of the travel over the street, or for other causes, the surface of a crosswalk becomes rough, irregular, and uneven on its surface, thus rendering the locality difficult and unsafe for foot passengers, the city is liable for injuries occasioned thereby. *Broburg v. City of Des Moines,* 63 Iowa 523; *Huston v. City of Council Bluffs,* 101 Iowa 33. In *Tobin v. City of Waterloo,* 131 Iowa 75, we quoted with approval from *Sankey v. Chicago, R. I. & P. R. Co.,* 118 Iowa 39, the following:

"No such duty exists while the snow and ice remain unchanged by the interference of man or other artificial cause. That duty arises only when, by reason of such interference with the natural conditions, the snow or ice becomes ridged or rounded or uneven, or is made to assume some other form or present some other danger than would result solely from natural causes."

This is a fair statement of the rule, which has been enounced many times in this state. The appellant claims that the rule is that, when cold follows a melting snow, causing a film of ice on the sidewalks which it is practically impossible to remove, the municipality may, without being guilty of negligence, wait for a

change in temperature to remedy the condition. It is true that this statement was made in the case of *Beirness v. City of Missouri Valley*, 162 Iowa 720. It is, however, purely dictum in that case, and such rule might apply where the ice was as nature left it, undisturbed by artificial means, but we have never enounced that rule as applying to a situation like the one we have before us. Nor would we care to go so far as to acknowledge such to be the rule of this state. This storm, as shown, commenced on Thursday and continued until Saturday. The ice was frozen Saturday night or Sunday morning, and the city did nothing toward remedying this condition for four days. It was a question of fact for the jury to say whether, under these circumstances, the city used reasonable care and diligence in protecting the traveling public. Under these circumstances, there was evidence which showed negligence on the part of the city, and the evidence also showed appellee's injury and the extent thereof; and, under the record made, the question of contributory negligence, as stated, was one for the jury.

Equally so was the question of proximate cause and notice to the city of this condition. These being all questions for the jury, and having been properly submitted, we are not disposed to disturb the same.

With reference to the question of contributory negligence, we said, in *Templin v. Incorporated City of Boone*, 127 Iowa 91:

"But mere knowledge of the unsafe condition of an unbarricaded defective walk is not in itself sufficient to establish contributory negligence on the part of one rightfully using the same for the purposes of travel."

In *Robertson v. City of Waukon*, 138 Iowa 25, it is said:

"Streets and sidewalks are for the use of the public, and the law requires cities and towns to keep them in a reasonably safe condition for travel. It is not, therefore, the duty of the public or of individual members thereof to critically inspect such streets and walks before using the same. All that is required of the traveler is that he make such use of his senses and exercise such caution as persons of prudence ordinarily use under the like circumstances. * * * Having the right to use the walk, he was not bound to know of every danger its use might

2. MUNICIPAL CORPORATIONS: torts: defects or obstructions in streets: knowledge of danger: effect.

create, even though he did have knowledge of its generally dangerous condition.''

The same was the holding in *Harvey v. City of Clarinda*, 111 Iowa 528; *Bussell v. City of Fort Dodge*, 126 Iowa 308; *Cook v. Incorporated Town of Hedrick*, 135 Iowa 23; *Crandall v. City of Dubuque*, 136 Iowa 663.

Appellee was not bound to take another way, even though she knew of the defective walk, and although there were other or better walks which might have served her purpose. (In the case at bar, the question of whether or not there was another safer way was a matter of dispute.) *Kendall v. City of Albia*, 73 Iowa 241; *Sylvester v. Incorporated Town of Casey*, 110 Iowa 256; *Scurlock v. City of Boone*, 142 Iowa 580; *Jackson v. City of Grinnell*, 144 Iowa 232. Under these rules and the evidence, the question of contributory negligence was a question for the jury.

One other question is argued here by appellant, and that is that one Carmichael, one of the jurors who sat in the trial of the case, was partially deaf, which fact was unknown to counsel for appellant at the time of the acceptance of the jury or during the trial. This question is urged by the motion for a new trial, aided by affidavits. We have not the *voir dire* of the examination of the juror before us, but it seems that this same juror was chosen in a case tried later in the term, in which later case he was specifically examined on this question, but was finally accepted by the court as a juror. A transcript of the examination in that case is attached to the motion for a new trial. We are not advised whether, in the trial of the case at bar, the juror was examined, or accepted without examination; but, if he was examined by counsel for the city, if his deafness in any way seriously interfered with his hearing of the trial, it surely would have been noticeable on such examination. The trial court in the other case, after having the juror before him, observing his action and conduct, and listening to his examination by counsel (in which examination the court himself participated), determined that he was a competent juror. With this opinion of the court we are disposed to agree. Furthermore, we have held that, when the defendant accepts a juror, without examination as to his qualifications in the particular complained of, he waives

3. JURY: competency of jurors: waiver.

any objections to his qualifications afterward discovered. *Faville v. Shehan*, 68 Iowa 241.

After a careful review of the record in this case, we are satisfied that no error was committed, and, therefore, there is no reason for reversal.—*Affirmed.*

EVANS, C. J., and STEVENS and VERMILION, JJ., concur.

DE GRAFF and MORLING, JJ., dissent.