EMMA RITCHIE, Appellee, v. CITY OF DES MOINES, Appellant.

No. 40396.

NOVEMBER 18, 1930.

REHEARING DENIED FEBRUARY 12, 1931.

*George P. Comfort, Chauncey A. Weaver,* and *C. R. S. Anderson,* for appellant.

*Brown, James & Needham,* for appellee.

EVANS, J.—The accident under consideration occurred on the evening of January 31, 1929, on Sixth Avenue, near its intersection with Jefferson Street, in the city of Des Moines. The accident did not occur upon any sidewalk or upon any crossing. At 6 P.M., the plaintiff boarded a street car on Sixth Avenue for home. She left the street car near the intersection above named. The street car made a "near stop" as it approached the intersection. It was at this point that the plaintiff left the street car, some distance south of the intersection, the street car being headed north. As the plaintiff left the street car, she stepped into, or on the edge of, an icy rut, that was from 7 to 10 inches deep. Her foot slipped, and she fell, to her great injury, having suffered a fracture of both ankles. As to the circumstances of the accident and the character of the injury suffered therefrom, no dispute is disclosed in the record. The evidence for the plaintiff in that respect was

not controverted. The contention of the defendant in the court below was that the evidence failed to disclose any negligence on the part of the city. Such is the contention here. For the purpose of this discussion, we shall assume that the evidence was such as to warrant submission of the case to the jury if the accident had occurred upon a sidewalk or upon a street crossing. The differentiation presented for our consideration is that arising as between the duty of the city in the maintenance of safe sidewalks and street crossings for the use of pedestrians, on the one hand, and its duty of maintenance of the street, exclusive of sidewalk and crossing, for a like use. The plaintiff has presented her case on the theory that the scope of duty of the city as to pedestrians is identical, whether the locus be upon the sidewalk or upon that part of the street exclusive thereof.

On the other hand, the defendant contends that, though it is under the duty to use reasonable care to maintain its streets in a safe condition and free from nuisance, yet that duty extends indiscriminately to *all* traffic upon the street, and that it is under no special duty to protect the pedestrian, as such, against those dangers to which the pedestrian necessarily exposes himself from the movement of vehicular traffic thereon. Still more to the point, the defendant contends that the degree of effort which would render a sidewalk safe for a pedestrian is not adequate to render the street proper equally safe. The quantity of diligence which the law exacts in order to keep a sidewalk safe for pedestrians would ordinarily be inadequate to render a street safe therefor. The defendant's basic proposition is that the plaintiff has not proved negligence on the part of the city. The plaintiff has proved that the street was in a condition dangerous for pedestrians. But this falls short of saying that reasonable care on the part of the city would have rendered the street a safe place.

The facts concerning the condition of the street are not in dispute. These facts are descriptive of weather conditions and of results somewhat extreme and exceptional, which characterized the memorable winter of 1929.

On the evening of the accident, the city was under a coating of ice from 7 to 10 inches deep, which covered every street in the city. For 20 days the city had been in the grip of low temperature. During that period there had not been an hour when

the maximum temperature was above the freezing point, save only that, on January 22d, there were five hours when the thermometer reached a maximum of 35. On that day, however, 15 hundredths of an inch of rain fell, and added to the city's encumbrance. The latest dates upon which the maximum temperature rose above the freezing point were the 8th, 9th, 10th, and 11th, on which dates, respectively, the following maximum was recorded: 36, 33, 34, and 38 degrees. On the 4th and 5th of the month, snow fell, to the depth of more than 10 inches. Thereafter, on successive dates, precipitation occurred, totaling 2 or 3 inches or more. It goes without saying that the heavy traffic of the streets would press and pack this snow as fast as it fell. The long continued freezing weather naturally converted this covering into ice. A few hours of maximum temperature above the freezing point would only add to the difficulty, when followed, as it invariably was, by freezing temperature. It appears that automobiles in their travel gradually wore ruts in the ice, and the rut, in turn, drew to itself each passing wheel. It was into one of these ruts that the plaintiff slipped.

Upon this *résumé* of fact, the question confronting us is, What was the specific duty of the city with reference to this condition? The question is one which has not hitherto confronted us. The question has been considered to some extent in some other jurisdictions, from which we may get some light. The argument for the plaintiff is that it was the duty of the city to keep the streets free from ice, precisely as it was its duty to keep the sidewalks free from ice. But this contention begs the larger part of the argument. The burden is upon the plaintiff to show *negligence*. She must show that the city failed to do something which it reasonably could have done, and which would have removed the danger which the plaintiff encountered. It is also urged by plaintiff that it was incumbent upon the defendant to show what it did do, and that, if it was *impossible* for the city, with reasonable care, to remove the ice, it was for the defendant to prove it, and that it was for the jury to say whether it was impossible or not. Here again, the real nub of the problem is avoided. There was no burden of proof on the defendant. The burden was upon the plaintiff to prove the *possible,* rather than upon the defendant to prove the impossible.

Though it be the function of the jury to determine whether it be possible or impossible, there must be some *quantum of evidence* upon which the jury can predicate finding. Where snow falls upon the sidewalk, it may be readily passed into the street. That fact is obvious. Intervening circumstances are for the consideration of the jury. A path over a street crossing may be quickly shoveled, and the snow thrown into banks on either side. Even here, we have recognized a distinction as to the results which a reasonable degree of care may attain, as between a street crossing and a sidewalk. We have said, in effect, that the passing of vehicles over a street renders it impracticable to maintain a street crossing in the same degree of safety as a sidewalk. In the former days, the sled was a common vehicle of traffic in the wintertime. It needed the snow under its runners, in order to be efficient. Even the street crossing had to yield to it some of the factors of pedestrian safety. Though it be practicable, therefore, to open a safe way of travel for the pedestrian over the street crossing, by depositing the snow in other parts of the street, what shall we say of a possible undertaking by the city council to remove all the snow from the full width of the street and from the full length of all the streets in the city, in order to render such streets safe for the use of a pedestrian? Where is the receptacle into which the snow may be thrown? Where is the transportation power which could move such mass in a day? The city has none of it, nor power to acquire it. In order to say, therefore, that the city was negligent, it would seem reasonable to require a showing that there was something practicable which the city could have done, to prevent the accumulation of snow upon the streets or to remove it when it fell. There is no suggestion of anything of that kind in this record. If a proper course of conduct or effort in such a case were obvious, as in the case of sidewalk or street crossing, then it might be said that a jury could observe the obvious fact and find accordingly. But there is nothing obvious here. Nor does counsel for appellee venture to suggest the obvious, if such, or to suggest any course of effort on the part of the city which would have freed it from the incubus of ice on January 23, or 31, 1929.

Few precedents are presented for our consideration, and we proceed to a consideration of these.

The appellee-plaintiff relies upon the single case of *Middleton v. City of Cedar Falls,* 173 Iowa 619. We find no support therein for the plaintiff's case. In that case, the injured party passed from her home on the east side of a street to a mail box on the west side thereof, and was injured by falling over an unlawful obstruction, consisting of a reel or spool of wire. That the city was negligent in permitting such an obstruction was not disputed in that record. The question considered by us was whether the injured party could be deemed guilty of contributory negligence because she crossed the street at a place other than a crossing, and did so on a very dark night, without knowledge, however, of any obstruction thereto. We held that she had a right to cross the street as and where and when she did, and that, in view of her want of knowledge of any obstruction, she was not guilty of contributory negligence. If we applied our holding in that case to the case at bar, it would simply mean that the plaintiff herein was not guilty of contributory negligence. The defendant does not contend for contributory negligence on her part. Such absence of contributory negligence has no probative bearing upon the question of the defendant's negligence.

The only other precedent we have in our cases where recovery was sought for injuries to a pedestrian from an accident in the street is that of *Broburg v. City of Des Moines,* 63 Iowa 523. In that case the plaintiff pleaded that the city had permitted, for a long time, an unlawful obstruction to be and to accumulate in the street, consisting of building material, including stones and brick, and that such obstruction had caused an accumulation of ice and snow in the region of this obstruction. There was a verdict for the plaintiff and an appeal by the defendant-city. In reversing the case we said:

"The test of liability *under the instruction is* whether the street was in a dangerous condition, caused by the accumulation of ice and snow. Such an accumulation may occur in a few hours; or, because of a fall of rain which freezes as it falls, the streets of a city may become, and frequently are, in this climate, coated with ice, thus rendering them dangerous to travelers. The city in such case would have the requisite notice, and, under the instruction, would be bound to remove it within a reasonable time. To so require would prove a great burden, and we think

that the better rule is that it is only when 'ice or snow is suffered to remain *upon a sidewalk* (or street crossing) in such an uneven and rounded form that a person cannot walk over it, using due care, without danger of falling down, that it seems to constitute a defect for which the city or town is liable.' ''

The foregoing presents the nearest point of approach to the particular question involved herein that we have ever attained. We touched the question incidentally in *Beardmore v. Incorporated Town of New Albin,* 203 Iowa 721, wherein we said:

''It is undoubtedly true * * * that a difference should be recognized in the details of the defendant's duty in the maintenance of a street crossing, as compared with the details of its duty in the maintenance of its sidewalks.''

See, also, *Tollackson v. City of Eagle Grove,* 203 Iowa 696, —a cross-walk case.

In cases from other jurisdictions, the only case cited to us which deals with a street accident upon the ice is that of *Mueller v. City of Milwaukee,* 110 Wis. 623 (86 N. W. 162). In that case the plaintiff was nonsuited, and the ruling of the trial court was affirmed on appeal, as follows:

''The nonsuit in this case was plainly right. Not only was the plaintiff walking upon a part of the street not prepared for foot passengers to walk upon, but the evidence utterly fails to show that she fell by reason of any actionable defect in the street. She testifies simply that she slipped upon the ice. This testimony does not show, or tend to show, that her fall was the result of any actionable defect.''

A number of cases involving accidents on crosswalks are cited by the appellant. One of these was *Ritter v. City of Shelton,* 105 Conn. 447 (135 Atl. 535), wherein it was said:

''The vehicular traffic which passes over a crosswalk is likely to bring upon it snow and water, and to cause ice to form, despite the best efforts of the city to keep it clean; protective devices such as sand or ashes, once applied, are likely to be swept away. Where the snow is melting and freezing, irregular surfaces are likely to form unexpectedly. These are matters of

common knowledge; the pedestrian anticipates greater dangers on the crosswalk than the sidewalk; and the city might rightly expect of him a greater care. Consequently it need not ordinarily exercise as close an oversight over its crosswalks as over its sidewalks, nor is it bound to exercise the same amount of care to make them reasonably safe for traffic. Reasonable care is still a test; but among the circumstances which must enter very largely into the determination of the question whether it has been exercised is the fact that the walk in question is a crosswalk, and not a sidewalk."

And again, from the same court, in *Campbell v. City of New Haven*, 78 Conn. 394 (62 Atl. 665) wherein it was said:

"Municipalities are not insurers of the safety of travelers upon their highways, whatever the season, or whatever the cause which renders them dangerous. The herculean task of making such ways safe at all times and under all circumstances is not imposed upon them. This is especially true in our climate in respect to accumulations of ice or snow thereon. Some duty is imposed in such cases, but it is a limited one, in that it takes into account a variety of conditions and circumstances, including the difficulties attending situations as they are created by the rigors of our winters."

In *O'Donnell v. City of Butte*, 65 Mont. 463 (211 Pac. 190), it was said:

"It may be stated as a general rule that a municipality is under no duty to keep its street crossings clear of snow and ice, and unless the condition caused by the snow or ice constitutes an unusual or a dangerous obstruction to travel, of a permanent nature, a municipal corporation is not liable to a pedestrian slipping on ice or snow on a street crossing and sustaining injuries. * * * Upon a crosswalk, where vehicles, horses, and people pass and repass in weather when the snow or ice is soft, lumps and ridges are likely to form, which will harden when frozen, and for which the municipality will not necessarily be responsible."

In *Dupont v. Village of Port Chester*, 204 N. Y. 351 (97 N. E. 735), it was said:

"There is a difference in the duty of a municipality regarding the care of sidewalks, used wholly by pedestrians, and crosswalks, or places where people cross over streets which are used, in winter, with teams attached to sleighs. Where a street in a village is traveled by the public with sleighs in the usual way when there is an accumulation of snow thereon, particularly in streets without specially formed crosswalks, the removal of all snow and ice at every crossing would materially interfere with the convenient and practical use of the street for trucking and driving. Even if entire removal of snow from a crosswalk is desirable for its use by pedestrians, the ordinary travel upon a street necessarily carries more or less snow upon the crosswalk, and when it thaws and freezes with varying temperature, it would be quite impossible, except by continuous effort, to keep crosswalks or crossings wholly free from snow and ice. We repeat that the obligation resting upon a municipality to keep its sidewalks free from snow and ice does not, in the absence of express provision of statute, apply to the same extent to a crosswalk or crossing on a public street."

In *Clifton v. Philadelphia*, 217 Pa. St. 102 (66 Atl. 159), it was said:

"The rut into which plaintiff stepped was only that which was worn by wagon wheels, as they left the edge of the Belgian block along the outside of the street car track. It does not appear to have been anything more than an ordinary rut, such as is constantly made by the wheels of heavy wagons in all dirt roads when soft or muddy, or when the soil of the roadway is not closely packed. As one of the witnesses explained, these ruts are temporary in their nature, and are shifted from place to place in the roadway, being liable to be filled by a passing wheel, which makes a new rut, in turn, adjacent to the line of the old one. It would be imposing a very great and burdensome degree of care upon a municipality to hold it to the duty of keeping dirt roads free from ruts of the nature and character of this one in question."

The foregoing authorities are sufficient to illustrate the absence of precedent for the recovery of damages against a municipality on the basis of alleged negligence in permitting snow and ice to accumulate upon the general area of the streets. Evi-

dently, to recognize a right of recovery upon the evidence in this record, consisting only of proof of the accident and the icy condition of the streets, would be to open up a field of litigation hitherto undiscovered.

Extreme weather conditions in this climate are inevitable, and when they occur, they are dominant and irresistible. They may overcome municipalities, and render puny the highest efforts at due care. When such natural conditions operate to foil human obligations of duty, they are usually deemed in law, "acts of God." All that human effort can do is to follow in the wake of the storm and mend the wreckage where it may.

Vying with the storm in dominance is the vehicular traffic of the city street. This moves on like a Juggernaut, even in a snowstorm. Powerful as the storm to move forward, it is yet powerless to stop. If, following a snowstorm, it were theoretically possible for a city to furnish immediate transportation sufficient to remove all the snow from all the streets to some remote locality, and to do so in a day, it would usually avail nothing, because the vehicular traffic has already trampled and packed the snowflake ere the storm subsides. There is a quality of absurdity in saying that the city should remove the snow from the streets *before* it becomes trampled and packed.

What we hold in the present case is that the record discloses no proof of negligence on the part of the city in permitting the formation of the coat of ice described herein.

The judgment below is, accordingly,—*Reversed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.