MRS. JENNIE STAPLES, Appellee, v. CITY OF SPENCER, Appellant.

No. 43603.

JANUARY 19, 1937.

1242

George A. Heald, Jr., for appellant.

Cornwall & Cornwall, and H. E. Narey, for appellee.

HAMILTON, J.—The accident causing the injury which is the basis of this action occurred on the forenoon of December 11, 1934, in the city of Spencer, Iowa, as the plaintiff was passing from the southwest corner of the intersection of Main and Fourth Streets to the southeast corner of said intersection. Main Street runs north and south and constitutes primary roads U. S. 18 and U. S. 71, and Fourth Street extending east and west is also a heavily traveled street. This crossing was therefore perhaps the busiest thoroughfare for pedestrians, and likewise vehicular traffic on the highway over Main and Fourth Streets was perhaps greater than that of any other section of the defendant city. According to the evidence, the snowfall in Spencer up to the date of the accident was as follows: On November 30, 1.5 inches, December 2, .5 inch, December 3, 7 inches, and on December 5, 1 inch. The official weather bureau record discloses that the temperature during all this period from November 30 to December 11 ranged from a maximum of 30 degrees above zero to a minimum of 7 degrees below zero. At no time was the temperature above freezing. There was testimony, however, to the effect that the temperature at times, even though slightly below freezing, was sufficiently mild so that with the pressure of the heavy traffic, it would cause the snow to sufficiently soften or melt and run together or pack down upon the crossing, forming an icy substance. The evidence shows that the city officials on the 3d of December, by means of steel scrapers, cleaned off this particular crossing, as well as others, cleaning a foot passage six or seven

feet wide, practically down to the pavement, and that on the 6th, 7th and 8th of December they also cleaned the snow off the street for several blocks north and south of this crossing and hauled the same away on trucks; that through the central part of the street where the traffic of the cars was heaviest it was impossible to get all the snow off and the hundreds of cars passing over the crossing would deposit some of this snow from the street upon the crossing and which was packed down by the traffic; so that on the day of this injury there was a coating of icy substance from an inch to two or three inches thick on the crossing, and across and through this icy substance were the tracks or corrugations made by the vehicular traffic, and that these grooves or corrugations were from an inch to two inches in depth, that there were several of these corrugations through this street crossing where the accident took place, and that the plaintiff, in attempting to cross, stepped into one of these depressions, wheel tracks or corrugations, slipped and fell, breaking her hip.

The plaintiff alleges in her petition that this snow had been allowed to remain on the street and the melting and freezing of the snow and the continuous use of the streets had caused the street crossing to become rough and uneven, and that the city had not removed the snow and ice but had permitted it to remain in such condition for a period of about two weeks, the particular grounds of negligence being:

"1. In permitting the snow to remain on the street for a period of about two weeks, and without making any reasonable effort to cause the snow to be removed.

"2. In permitting the snow to remain on the street for such length of time that it was caused by the weather to freeze and thaw and become rough and uneven and irregular by the travel of pedestrians and vehicles over the same.

"3. Because the defendant failed to use ordinary and reasonable care to remove the snow and ice and to clear the pathway across the intersection for pedestrians.

"4. Because the defendant knew, or in the exercise of reasonable care should have known that if the snow and ice were permitted to remain and freeze and that it would become rough and irregular and uneven and would be dangerous to the public and pedestrians rightfully using the crossing.

"5. That the city was negligent because it failed to put on

the ice any sand or cinders or other substance which would prevent pedestrians from slipping and falling thereon.''

The law governing the question involved in this case is quite well settled in this state, and we will make only brief reference thereto. In the first place, cities and towns are officered and managed by human agencies which are subject to finite limitations, and there is no principle of law or justice which exacts from city officials the impossible. Neither is a municipality an insurer of the safety of its sidewalks or street crossings in relation to snow and ice. Wilson v. City of Clinton, 204 Iowa 1183, 216 N. W. 698. It is not enough to prove that the street was in a condition dangerous for pedestrians, but the plaintiff must go farther and sustain her burden of showing that the city was negligent, that it failed to do something which it reasonably could have done and which would have removed the danger which the plaintiff encountered. Ritchie v. City of Des Moines, 211 Iowa 1026, 233 N. W. 43.

This court has recognized a slight distinction or difference in the details of the city's duty in the maintenance of a street crossing as compared with its duty in the maintenance of sidewalks. Beardmore v. Incorporated Town of New Albin, 203 Iowa 721, 211 N. W. 430; Tollackson v. City of Eagle Grove, 203 Iowa 696, 213 N. W. 222. The feebleness of human agencies and efforts in attempting to cope with the power of the elements is recognized by all courts and is aptly described by the late Justice Evans in his inimitable style in the Ritchie case, supra, 211 Iowa 1026, at page 1035, 233 N. W. 43, 47, in these words:

''Extreme weather conditions in this climate are inevitable * * *. They may overcome municipalities, and render puny the highest efforts at due care. When such natural conditions operate to foil human obligations of duty, they are usually deemed in law, 'acts of God.' All that human effort can do is to follow in the wake of the storm and mend the wreckage where it may.''

In discussing the difficulties encountered in maintaining a street crossing in a safe condition for traffic the Connecticut court in the case of Ritter v. City of Shelton, 105 Conn. 447, 135 Atl. 535, 537, uses the following pertinent language:

''The vehicular traffic which passes over a crosswalk is likely to bring upon it snow and water, and to cause ice to form,

despite the best efforts of the city to keep it clean; protective devices such as sand or ashes, once applied, are likely to be swept away. Where the snow is melting and freezing, irregular surfaces are likely to form unexpectedly. These are matters of common knowledge; the pedestrian anticipates greater dangers on the crosswalk than the sidewalk; and the city might rightly expect of him a greater care. Consequently it need not ordinarily exercise as close an oversight over its crosswalks as over its sidewalks, nor is it bound to exercise the same amount of care to make them reasonably safe for traffic. Reasonable care is still a test; but among the circumstances which must enter very largely into the determination of the question whether it has been exercised is the fact that the walk in question is a crosswalk, and not a sidewalk.''

The truth of the foregoing statement is confirmed by common knowledge and experience, of which this court will take judicial notice, and which is forcibly illustrated by the evidence in the instant case, it appearing from the evidence that the sidewalks on each side of this crossing were cleaned off and free from snow and ice, while the crossing still remained icy and slippery. Notwithstanding all these difficulties to be encountered, there still remains the principle of law recognized by this as well as all other courts, that street crossings and sidewalks are maintained for the use of the public, and cities and towns are required to keep them in a reasonably safe condition for travel, and to use all reasonably practical means available to this end. A very similar situation was presented by the record in the case of Tollackson v. City of Eagle Grove, 203 Iowa 696, 698, 213 N. W. 222, 223, a crossing case where due to the traffic and the thawing and freezing of the snow the crossing was marked with depressions, making the same rough, irregular and uneven, and in that case the city made the same contention that the defendant city is making in this case, that because of the condition of the weather and the packing and freezing of the snow, and there being no weather to thaw or melt the same loose, there was no duty upon the city to do anything about it. In the Eagle Grove case the rule of law applicable is set forth as follows:

''It is, of course, well settled, under the holdings in this state, that, if this crosswalk was covered with a smooth coating of ice, and was as nature left it, undisturbed by the traveling public

thereon, the city would not be liable. Such has been our holding in numerous cases, among which are Ray v. City of Council Bluffs, 193 Iowa 620, 187 N. W. 447; Eickelberg v. City of Waterloo, 197 Iowa 1219, 198 N. W. 638, which are typical cases under this rule. On the other hand, it is equally as well settled that where, by reason of the travel over the street, or for other causes, the surface of a crosswalk becomes rough, irregular, and uneven on its surface, thus rendering the locality difficult and unsafe for foot passengers, the city is liable for injuries occasioned thereby. Broburg v. City of Des Moines, 63 Iowa 523, 19 N. W. 340, 50 Am. Rep. 756; Huston v. City of Council Bluffs, 101 Iowa 33, 69 N. W. 1130, 36 L. R. A. 211. In Tobin v. City of Waterloo, 131 Iowa 75, 107 N. W. 1031, we quoted with approval from Sankey v. Chicago, R. I. & P. R. Co., 118 Iowa 39, 91 N. W. 820, the following: 'No such duty exists while the snow and ice remain unchanged by the interference of man or other artificial cause. That duty arises only when, by reason of such interference with the natural conditions, the snow or ice becomes ridged or rounded or uneven, or is made to assume some other form or present some other danger than would result solely from natural causes.' This is a fair statement of the rule, which has been enounced many times in this state.''

That the crossing in question was icy and slippery and somewhat corrugated due to automobile traffic on the street, making it more or less hazardous to pedestrians in passing over the same, and that it had been in this condition for several days is without material dispute in the evidence. The plaintiff had not crossed over this crossing before, and on the day of her injury she had been transported from a neighboring town and the car in which she was riding was parked a few feet south of this crossing on the west side of the street. She alighted from the car onto the sidewalk and proceeded north to this crossing, turned east and proceeded to cross to the other side of the street. She said she noticed the crossing was icy and slippery and dangerous, but thought she could cross over safely, that she walked carefully, that she noticed the corrugations or tracks made by the cars, she had stepped over some of them, that she was watching the street traffic and when she had proceeded beyond the center her foot slipped into what she called a ''little hole'' or depression which was one of these tracks made by the car traffic, and her

feet slipped from under her and she fell. There was evidence from which the jury was warranted in finding that the city officials had knowledge of the slippery, rough, corrugated condition of this crossing for at least sufficient length of time to have remedied the extremely slippery condition of the crossing by sprinkling sand and gravel over it. The evidence shows without dispute that this was done on the same day of the accident, shortly after the accident happened. The evidence also shows that sand and gravel were available and were being used by the city for this purpose, and that for several years the city had followed this custom of spreading sand and gravel on the icy crossings in the busiest sections where the traffic was heavy and sometimes in residence sections of the city. The street commissioner, a witness for the defendant, testified that he had been street commissioner since April, 1934, and that when he first started he was advised by the mayor to put sand on the crossings when they were slippery. Counsel for appellant very earnestly contends that there is no duty upon the city or any city to sand slippery crossings. We think counsel has overlooked one of the fundamental principles of the law of negligence, namely, the duty to use reasonable care in keeping the crossing in a safe condition and to do this the city certainly was required to use any feasible or practical means at hand. Certainly the city officials, with sand and gravel at hand available for the very purpose of using the same to render slippery and icy crossings less hazardous, could not sit idly by and do nothing under such circumstances.

Now, we do not want to be understood as holding that a city is duty bound to keep on hand sand and gravel or that there is at all times and under all circumstances any duty upon a city or town to sand or/and gravel icy crossings; yet where the evidence discloses that the city was equipped to do this, as the city of Spencer was, and had men employed whose business it was to place sand upon the icy crossings, and through delay, indifference and neglect such employees and agents of the city failed to do what it is apparent from the evidence they could reasonably have done, namely, covered this icy crossing with sand and gravel which would, as everyone knows, have lessened the danger, the question of negligence under such circumstances was for the jury. This seemed to be the view of the trial court and under the facts and circumstances of this case we are not inclined to disturb the jury's finding.

1248

The case seems to have been fairly tried and submitted, as no question is raised except as to the sufficiency of the evidence, and the contention that plaintiff failed to show herself free from contributory negligence. We think the question of contributory negligence under the facts disclosed by the evidence was clearly for the jury. This was one of the busiest street crossings in the city. There is no claim that there was any safer avenue of passage. Plaintiff had a right to go where hundreds of others were continually going, over and across this crossing which was held out by the city as a passageway across the street for foot traffic. She observed the street "stop and go" signals and says she was very careful to avoid slipping. No one disputes this. Many cases are cited in support of the opposing contentions. Precedents are of little value in cases of this character, as each case must be determined upon its own peculiar facts. The plaintiff suffered a broken hip with resulting pain and suffering, loss of time, expense of medical attention and nursing. There is no claim that the verdict was excessive. By agreement the cause was transferred from Clay county to Dickinson county for trial. The case appears to have been fairly and ably presented to the jury with the result indicated. The evidence presents a situation where the court may not arbitrarily invade the province of the jury and set aside its verdict, and hold as a matter of law that there was no negligence and consequently no liability on the part of the city. The reasoning in the opinion in the case of Allen v. City of Ft. Dodge, 183 Iowa 818, 167 N. W. 577, is quite pertinent at this point. Accordingly the cause is affirmed.—Affirmed.

RICHARDS, C. J., and MITCHELL, ANDERSON, PARSONS, STIGER, DONEGAN, and KINTZINGER, JJ., concur.