EARL A. RUSSELL, Appellee, v. CITY OF SIOUX CITY, Appellant.

No. 45056.

March 12, 1940.

Jepson, Hatfield & Jepson, for appellee.

V. O. DeWitt and Ralph C. Crary, for appellant.

RICHARDS, J.—Sixth street, in Sioux City, extends east and west. It is intersected at right angles by Pierce and Nebraska streets. The two last-mentioned streets are a block apart, and midway between them a north and south alley also intersects sixth street. Plaintiff claims that, walking east upon the sidewalk on the north side of Sixth street, he came to the alley intersection; that there he paused momentarily to see whether a car approaching from the east would be turned into the alley; that then starting across the intersection he took one step whereupon his foot slipped and he fell, sustaining injuries for which in this action he seeks damages. This happening was at about 9:30 p. m. on May 24, 1938. From a judgment upon a verdict in favor of plaintiff defendant city has appealed.

Plaintiff alleged that the cause of his injuries was certain specified negligence on part of defendant. The specifications were that defendant was negligent in that it constructed or permitted to be constructed the paving upon the alley intersection, (1) so that it was short and steep, and (2) of a material which for a long period had been smooth and slippery.

The court overruled defendant's motion for a directed verdict. One of movant's grounds was, in substance, that there was no evidence warranting submission to the jury of the question of defendant's negligence in either specified respect, and that the evidence as to those matters was such that it would be the

court's duty to set aside any verdict that might be rendered in favor of plaintiff. On this ground, says defendant in one of its assignments of error, the motion should have been sustained. The question presented makes it needful that we turn to the record.

On the trial defendant contended that the alley intersection was constructed under supervision of competent engineers, according to plans· by them prepared and submitted to and adopted by the city council, and that if there were the alleged defects they were not due to any acts of negligence on the part of the city but rather to errors on the part of the engineers for which there was no liability on part of the city. Plaintiff concedes that the constructing was done by contractors under the statutes that provide for the making of street improvements by cities and towns, the letting of contracts therefor, and the assessment of costs to benefited real estate; that a plat and schedule were prepared and submitted by the city engineer, who admittedly was competent, and that these were adopted by the city council. Plaintiff, however, contends there is no showing of the adoption of plans for the construction. But from the testimony of the city clerk it appears that plans and specifications for the improvement were filed with and referred to in the resolution that provided for the making of the improvement, and were kept with the resolution until it was passed, and that thereafter these plans and specifications were sent to the city engineer's office. What then became of them is not clear. An engineer, who was employed in the city engineer's office at the time of the construction of this improvement, testified that such plans and specifications were deemed of no value or consequence after an improvement was completed and were then destroyed. Later in his testimony the same witness states that the original plans and specifications were not the ones destroyed. Though from the evidence it appears that such plans and specifications were filed before the contract was let and evidently were adopted as part of the proceedings, they were not to be discovered at the time of the trial and have not been introduced in evidence. Plaintiff also takes the position that, according to the testimony, the original plans and specifications failed to state any grade on which the proposed paving of the alley intersection was to be constructed. Relying on that showing he

urges that, if the paving was negligently constructed in that it was too steep, the city cannot avail itself of the defense that the city adopted and followed a competent engineer's recommendation of that steepness, because the engineer did not recommend that or any other steepness.

In adopting plans for the construction of the improvement defendant city was acting in a judicial capacity. It was not liable for defects in the plans unless as a matter of law the plans were obviously defective. Dodds v. West Liberty, 225 Iowa 506, 281 N. W. 476. Plaintiff's claim is not to the effect that anything affirmatively appearing in the plans made them obviously defective. The claim is that there was a fault of omission. If so it was the engineer who did the omitting. To an expert engineer the omission of a showing of the grade of this alley paving might or might not be obviously a defect. But to a city council exercising the capacities of laymen engineering expertness is not imputed, that being one reason it is within their province to employ an engineer who is competent and to rely on his engineering ability and on his plans for the constructing of an improvement as being proper and sufficient. In view of the showing in this record the necessary conclusion is that in the adopting of the plans no neglect of duty can be imputed to defendant's city council. The plans were not as a matter of law obviously defective. No blame attaching at that point, none is to be found later because the evidence is clear that the work was done in accordance with the plans. There was no variance from the plans as they had been drawn by the engineer. A different fact situation obtained in Hodges v. Waterloo, 109 Iowa 444, 80 N. W. 523, cited by plaintiff. The plans in that case submitted by the engineer to the city council affirmatively set out that approaches connecting the streets and alleys should be graded as directed by the engineer. This defect was contained in the very plans and, unlike the situation in the instant case, was patent and obvious to the city council, laymen though they were. The defect was before their eyes and they adopted it with full knowledge. In the instant case any fault of omission there may have been was the engineer's and remained his without becoming likewise the council's fault as in the cited case. The Sioux City council having adopted and followed a general plan, though it may have been

faulty from an engineering standpoint, and having relied thereon as of right they could do, negligence of the city in the constructing of the improvement does not appear, so far as steepness of the grade is concerned.

Defendant's further contention is that, irrespective of any excuse or immunity on account of a competent engineer's plans having been adopted and followed, the evidence was insufficient to warrant submitting to the jury the question whether with respect to steepness the city permitted the paving of the intersection to be constructed in a negligent manner. In determining rightly the soundness of this contention the whole of the situation that confronted the council should be envisioned. It is not enough to point out the degree of steepness, and thereupon come to a decision, for the reasons that follow.

The width of the alley and of its intersection with Sixth street was 16 feet. When there were rainfalls the alley carried considerable volumes of surface water flowing south into Sixth street where provisions had been made for its further disposal. Flush with each side of the alley were permanent structures, one the Warrior hotel, the other a large mercantile building. Both buildings extended to the Sixth street line, and in front of each was a permanent sidewalk. The alley carried north and south vehicular traffic. The two sidewalks on each side of the alley intersection carried east and west foot traffic. These were fixed conditions. They imposed on the council duties (1) to provide escape for the surface water toward the south into Sixth street, (2) to enable vehicular traffic to travel through the alley without obstructions violating the public's right to freely use that thoroughfare, and (3) to make provisions for the safety of the east and west pedestrian travel.

The permanent sidewalks, where they ended at the alley intersection, were approximately 11 inches higher than the north and south center line of the paving as it was constructed upon the intersection. From the edge of each sidewalk the paving sloped approximately 7½ inches in the first 3 feet, 2 inches in the next 1 foot and 1½ inches in the remaining 4 feet to the center of the intersection. Plaintiff relies largely on the testimony of one of his witnesses, an engineer, and emphasizes that this witness stated that it was not necessary to construct the paving with a 20.8 per cent grade in the first 3 feet of the slope

and that this grade was twice as steep as any this witness would approve. But it would appear that these statements were intended by the witness as a general engineering proposition. Isolating these statements from the remainder of his testimony is conducive to an erroneous interpretation of his meaning. For he stated further that no established rule can be laid down that is applicable to any and all alley intersections because in each specified case there are always certain fixed conditions that must be taken care of, and he stated that these conditions are the factors that determine what grades are to be followed. He stated it is true that practice in constructing alley intersections has not been anywhere nearly standardized, and can not be. He testified that a constant slope of the paving from the sidewalks to the center line would have been on a grade of less than 12 per cent. But he admitted he did not have the information necessary to state whether such a slope would have materially affected the drainage of the surface water, and he agreed that in constructing the paving it was necessary to make proper provision for the drainage of this particular alley. He stated that the established grade of the sidewalks on each side was another fixed condition and a limitation upon what could be done. This witness summarized his testimony by saying that all that can be done in the construction of an alley crossing, such as was this particular one, is to exercise judgment under the conditions, and to meet them as best one can, and to hold the grades as low as is practicable in view of the established grades of the adjoining sidewalk, the drainage facilities, the safety of pedestrians, and the traffic involved.

 All the witnesses conceded the general proposition that as the slope of a place for walking is accelerated the pedestrian's safety is naturally lessened. But though the degree of safety be lessened the pedestrian still owes to himself the duty of exercising ordinary care, and the city's duty to him is of like character. It is to exercise such care as characterizes ordinarily prudent persons. In no sense is the city an insurer of the pedestrian's safety. In Lush v. Parkersburg, 127 Iowa 701, 104 N. W. 336, an approach from a sidewalk to the street sloped 1 foot in 7. It was held that the jury would not have been justified in finding as a matter of fact that it constituted negligence to construct the approach at that slope. In Griffin v. City

of Marion, 163 Iowa 435, 437, 144 N. W. 1011, 1013, a similar approach sloped 9 inches in 75. Held, "In our opinion, the construction of this approach on such a slope would not warrant a finding that the city was negligent." A temporary sidewalk, that was apparently not an intersection crossing, was involved in Ford v. City of Des Moines, 106 Iowa 94, 75 N. W. 630. This sidewalk, constructed of planks, was placed in a trench, sloped 5 feet in 40 and was provided with no cleats or handrails. It was held that it was a question for the jury whether the city was negligent in constructing the walk and permitting it to remain as it was. But we have recognized that, at least in some respects, details of duty owed in respect to a sidewalk differ from those a city owes where an intersection is involved, on account of the city's greater difficulties incidental to intersections. Beardmore v. New Albin, 203 Iowa 721, 211 N. W. 430.

■ One distinction between the Parkersburg and City of Marion cases, just cited, and the instant case, is one of fact. That is, there is a steeper slope in the intersection in the case at bar. Content with pointing to that fact, isolated from all else in the record, plaintiff urges that the cited cases are not at all controlling. But plaintiff fails to give consideration to another fact clearly shown in this record, and which was not a factor in the cited cases, i. e., the drop and slope from the sidewalk level was demanded and made necessary by the city's duty to provide a sufficient means of escape for the surface water. There is no denial of this necessity in the evidence. The only question there can be is whether that duty could have been properly observed by providing a less means of flowage thereby enabling the slope of the paving of the intersection to be lessened. Upon that question the evidence is that all provisions made for water are needful. As already said, the only witness plaintiff offered on that question was the engineer who admitted he did not have the information necessary to be able to state whether a gradual slope of the intersection, less than the slope that was adopted, would have materially affected the drainage. The question is not presented whether the slope would have been excessive had there been a reasonable possibility of constructing this intersection for the single purpose of accommodating foot traffic.

" * * * cities and towns are officered and managed by

human agencies which are subject to finite limitations and there is no principle of law or justice that exacts from city officials the impossible. * * * It is not enough to prove that the street was in a condition dangerous for pedestrians, but the plaintiff must go farther and sustain her burden of showing that the city was negligent, that it failed to do something which it reasonably could have done and which would have removed the danger which the plaintiff encountered. Ritchie v. City of Des Moines, 211 Iowa 1026, 233 N. W. 43.'' Staples v. City of Spencer, 222 Iowa 1241, 271 N. W. 200.

Plaintiff's and defendant's expert witnesses were in agreement that the course pursued, that is, the ramp construction of the intersection, was a recognized engineering method. And if in so proceeding defendant was negligent it was because it failed to observe some duty it owed plaintiff as a pedestrian. That duty, of course, was to use ordinary care for the safety of plaintiff and like pedestrians. Plaintiff's position is that the slope should have been constant from the sidewalks to the middle of the intersection. He concedes that with that degree of care there would not have been negligence. In other words plaintiff's real point is that not enough care was exercised, that the care in fact used was not sufficient because the slope was not made less. But we find no evidence in the record showing that defendant exercised less care than was reasonable. This is because, in exercising the care and prudence the law required, the council was under obligation to give heed to all duties it owed, and as we read the record it shows that in so doing they of necessity could have gone no further in affording safety for pedestrians by lessening the slope without unduly impinging upon other duties that were at the same time to be performed with like ordinary care and prudence. On the question of negligent construction, submitted to the jury, they were left to speculation with respect to an alleged insufficiency of care not shown in any evidentiary manner. Plaintiff did not carry successfully the burden of showing that there was negligent construction in respect to the steepness of the intersection.

The other specification of negligence was to the effect that the paving was constructed of a material which for a long period had been smooth and slippery. The paving was of a type known as ''vibrolithic.'' It was composed of concrete and

granite chips. At the time plaintiff fell the evening was clear. There had been no rain or mist and the pavement was dry. As to the surface of the paving having been in any condition other than being dry when he fell plaintiff testified he could not say. Other witnesses testified that at this time and for a period prior thereto the pavement seemed to be "smooth," one witness saying "pretty smooth." If there was smoothness it must have been a quality inherent in the material of which the paving was constructed, no claim being made that any foreign substance had artificially changed the natural surface of this cement and granite paving. The material was that used in a generally accepted type of paving construction. We are unable to discern anything of substance in this showing that would sustain a fact finding of negligence in maintaining this paving though it may have been smooth. A similar question was decided adversely to plaintiff's contention, though under somewhat differing facts, in Dalbey v. Town of Irwin, 194 Iowa 1139, 191 N. W. 119. Because the record did not warrant submitting to the jury either specification of negligence the motion for directed verdict should have been sustained. Accordingly the judgment is reversed.—Reversed.

HAMILTON, C. J., and MILLER, SAGER, STIGER, HALE, and BLISS, JJ., concur.