MRS. FRED BAHNER, Appellant, v. CITY OF DES MOINES, Appellee.

No. 45517.

14

MARCH 11, 1941.

REHEARING DENIED JUNE 20, 1941.

Bradshaw, Fowler, Proctor & Fairgrave, for appellant.

F. T. Van Liew, B. J. Flick, and Sol Glick, for appellee.

MILLER, J.—The injuries, for which plaintiff demands damages from the defendant City, were received while plaintiff was riding as a passenger in the rear seat of an automobile which was being operated north on East 24th Street crossing Grand Avenue in the City of Des Moines, Iowa. Plaintiff's petition asserts that the defendant City was negligent in that it "allowed to exist a short distance north of Grand Avenue on East 24th Street, a dangerous and defective place in the travelled portion of said highway, consisting of a large hole several inches in depth, and several feet in width, of such a nature that it was not readily discernible to drivers of vehicles over said highway or street," and that "the condition of said highway as aforesaid, and all surrounding circumstances relating thereto * * * were known to the defendant for such a length of time prior to the happening of the accident * * * as that in the exercise of reasonable diligence and ordinary care it might have repaired the same."

The petition asserts that defendant was negligent in the following particulars:

"(a) In permitting said hole and depression to exist and remain in the traveled portion of said highway.

"(b) In permitting said defect to remain in said traveled portion of said highway at the time and place aforesaid without warning signs to drivers of vehicles upon said highway, and this plaintiff in particular.

"(c) In clearing Grand Avenue by snow plows on several different occasions, thus causing an accumulation of ice and snow on East 24th Street to the north of Grand Avenue.

"(d) In clearing Grand Avenue with snow plows and piling therefrom a large amount of snow on the travelled portion of East 24th Street, which said snow constituted an obstruction and a nuisance to travelers upon said 24th Street.

"(e) In failing to keep East 24th Street free from a nuisance which interfered with ordinary public travel.

"That the defendant knew, or in the exercise of ordinary care should have known, of the fact that the piling of snow across the traveled portion of East 24th Street would make a dangerous condition for travelers on said street."

In compliance with the ruling on a motion for more specific statement, plaintiff alleged: "The dangerous and defective place in the traveled portion of East 24th Street consisted of a large hole several inches in depth and several feet in width in the snow or ice, and would be commonly called a chuck-hole in the traveled portion of the highway."

The answer of defendant City asserts a general denial. It also asserts that the accumulation of ice and snow was not due to any defect in the construction of 24th Street, was due to natural causes, without negligence on the part of the City, and "because thereof the facts stated in plaintiff's petition do not entitle plaintiff * * * to any relief."

At the close of plaintiff's evidence, the court sustained defendant's motion for a directed verdict. Judgment was entered accordingly and plaintiff appeals. The only errors assigned challenge the ruling of the court on the motion for a directed verdict. The motion having been made at the close of the plaintiff's evidence, there is little if any conflict in the evidence.

Plaintiff's injuries were received on February 23, 1940. It was kind of snowing and drizzling at the time. Plaintiff was riding in the rear seat on the right-hand side, talking to a friend. The automobile was owned by R. M. Doty and was being driven

by a Miss Smith. As the car proceeded north on East 24th Street, it made a boulevard stop on the south side of Grand Avenue, proceeded slowly across Grand Avenue and struck a chuck-hole in the ice and snow. Plaintiff was severely injured as a result of the jolt. She did not see the hole and could not say whether it would attract anyone's attention because she was not looking.

Miss Smith, the driver of the car, did not testify. The other occupants of the car, besides the plaintiff, were Mrs. Doty who was riding in the front seat, and Mrs. Perry, who was riding in the rear seat. They testified to the same facts as did plaintiff, and also to the fact that plaintiff was the only occupant of the car that was injured and that the car was driven away on its own power. No occupant of the car undertook to describe the chuck-hole as to size, appearance or location.

Doty examined the scene of the accident on the morning of February 24, 1940. He testified: "Prior to February 23, 1940, I had observed a hole in the snow and ice at a point north of Grand Avenue on East 24th Street. * * * Well, it is just where the snow plow had went along Grand Avenue and piled the snow up in the intersection, and the water, it was running off of 24th, just laid there, and as cars were going along it just kept wearing a hole in the ice and snow. The hole was between 8 and 12 inches deep. It was on the east side of 24th Street. It had existed there for two or three weeks anyway. * * * There was ice there and water inside of the ice. There was a hole there, and the water rolled down into this hole and every night it froze. The hole was south of the sidewalk that crosses 24th Street on the north side of Grand Avenue. It was not on a crosswalk. 24th Street is a paved street and was paved before this accident. * * * They are both paved streets. There was snow and ice there, when I arrived, and there was water in this hole. This water did not have any drainage out of this place. They had the snow and ice piled up along the curb line in the intersection. * * * Well, it [the hole] was between the curb line of 24th and Grand and the crosswalk. * * * I would say it extended about half way from the 24th Street curb line to about half way to the center of the street. * * * On the east side. * * * Q. You said this water was about 8 to 12 inches deep, didn't you? A. Yes. Q. Water running over the curb? A. No."

Henry Bruntmyer testified: "The snow plows had passed up and down the street and caused the snow to pile over against the curb, across the crossing there, and piled the snow up, I should say two or three feet, I imagine, and packed down and then eventually there got a hole in there from the automobiles or else it melted enough to get this hole in there, and it just kept getting worse, of course, as time went along. On February 23, I would say this hole was practically three fourths of the distance across the street. It was so close to the west curb of 24th Street that you could not go around the corner any way you wanted to. You couldn't miss it. It was clear across the east side. I would say this hole was about two or three feet wide north and south and at least twelve inches deep. There were no warning signs there and no barricades. * * * You could not see the hole until you got too close to it to stop. * * * The hole I described was in the snow and ice. The pavement was all right. The pavement was all right before the snow. * * * My recollection is that the condition existed there for three weeks or a month. It never got any better. Traffic kept cutting it out. Sometimes it would be frozen up hard during the month of February, and other times it was soft."

William Jackson, an employee of the City, testified that on February 9, 1940, he operated a city snowplow on Grand Avenue between 18th and East 30th Streets, and also on Grand Avenue across the intersection at East 24th Street on February 8, 1940. He testified: "The plow I run is a Caterpillar Diesel V, with plow in front. We have a twelve foot blade behind it. It is about eighteen inches up and down. * * * In operating the plow, I can control the blade by raising and lowering it. I operate it uniformly about the same way over all the streets. I cover from fifteen to twenty miles a day. Wide streets we start in the middle and make two swipes. When I come to an intersection, I raise the heel of my blade. All intersections are the same. When I raise the heel of my blade, it flares the snow out, and does not leave it in big ridges. There are five of us employed in moving snow."

The foregoing is the evidence in the record herein by which plaintiff undertakes to establish negligence on the part of the City. We are of the opinion and hold that the court correctly

determined that the evidence was insufficient to establish such liability.

Both parties agree that, as a general proposition, a city is not liable to respond in damages for injuries sustained by reason of an accumulation of ice and snow in the traveled portion of its streets. Whereas there is a duty to remove ice and snow from sidewalks, there is no corresponding duty in reference to streets and highways. This proposition is expressly recognized in the case of Ritchie v. City of Des Moines, 211 Iowa 1026, 1029, 233 N. W. 43, 44, wherein we state:

"The burden is upon the plaintiff to show *negligence*. She must show that the city failed to do something which it reasonably could have done, and which would have removed the danger which the plaintiff encountered. It is also urged by plaintiff that it was incumbent upon the defendant to show what it did do, and that, if it was *impossible* for the city, with reasonable care, to remove the ice, it was for the defendant to prove it, and that it was for the jury to say whether it was impossible or not. Here again, the real nub of the problem is avoided. There was no burden of proof on the defendant. The burden was upon the plaintiff to prove the *possible,* rather than upon the defendant to prove the impossible."

After an extensive review of our own decisions, as well as decisions from other states, we state at page 1034 of 211 Iowa, page 47 of 233 N. W., as follows:

"The foregoing authorities are sufficient to illustrate the absence of precedent for the recovery of damages against a municipality on the basis of alleged negligence in permitting snow and ice to accumulate upon the general area of the streets. Evidently, to recognize a right of recovery upon the evidence in this record, consisting only of proof of the accident and the icy condition of the streets, would be to open up a field of litigation hitherto undiscovered."

The foregoing decision is quoted from with approval and expressly followed in the case of Workman v. Sioux City, 218 Iowa 217, 221, 253 N. W. 909, 911, wherein we state:

"Whatever the drainage system established by the city, whether it was good or bad, snow and ice will melt in the sun

and will accumulate and freeze when the resultant water strikes the shade. To hold that the city would be liable in damages for the accumulation of snow and ice in the vehicular part of the roadway during a period of such heavy snowfall and of the thawing and freezing of the ice, would be to establish a rule of liability for cities that would soon force into bankruptcy the few remaining solvent cities in our state.''

Appellant emphasizes that her theory is that the case rests upon an act of commission rather than an act of omission, stating that, for the purpose of the case, it might be conceded that the City was not bound to act to remove snow and ice from its streets in order to make them safe for use. Appellant contends that, when the City undertook to remove snow from one street (Grand Avenue) and thus render it safe for travel, it could not pile such snow in another street (East 24th Street) in such a way as to form a dangerous obstruction and later a dangerous condition without undertaking to warn or otherwise protect persons lawfully using East 24th Street against the hazard which the City had created. Appellant relies upon the decisions of this court in Stafford v. City of Oskaloosa, 57 Iowa 748, 751, 11 N. W. 668; Streeter v. City of Marshalltown, 123 Iowa 449, 450, 99 N. W. 114; Hazard v. City of Council Bluffs, 87 Iowa 51, 53 N. W. 1083; Shinnick v. City of Marshalltown, 137 Iowa 72, 73, 114 N. W. 542; Frohs v. City of Dubuque, 169 Iowa 431, 435, 150 N. W. 62, as well as decisions from other jurisdictions, text writers, etc. These decisions recognize the general proposition that the city may not place an obstruction in the highway or create a dangerous depression therein without being obliged to barricade or warn against injury from such dangerous condition. None of the cases, however, involve situations directly analogous to that presented by the record herein and we have been unable to find any that do. Accordingly, we are required to apply general principles, heretofore established by us, to the facts herein.

Complaint is made of the manner in which the snow was removed from Grand Avenue. The record shows that, whereas the normal snowfall in February is 7.1 inches, in February 1940, the snowfall in Des Moines was 12.7 inches, of which 4 inches fell on February 8, 1940. Grand Avenue is shown to be one of the most heavily traveled streets. As above pointed out, the snowplow

operated over Grand Avenue on February 8th and 9th. There were five men employed to operate the plows. They had between 75 and 90 miles of snow to clear each day. The method employed is described by Jackson and is not disputed. There is no evidence that any other method would be possible or practicable. In Ritchie v. City of Des Moines, supra, we state (211 Iowa at page 1030, 233 N. W. at page 45) as follows:

"* * * what shall we say of a possible undertaking by the city council to remove all the snow from the full width of the street and from the full length of all the streets in the city, in order to render such streets safe for the use of a pedestrian? Where is the receptacle into which the snow may be thrown? . Where is the transportation power which could move such mass in a day? The city has none of it, nor power to acquire it. In order to say, therefore, that the city was negligent, it would seem reasonable to require a showing that there was something practicable which the city could have done, to prevent the accumulation of snow upon the streets or to remove it when it fell. There is no suggestion of anything of that kind in this record."

We hold that it was proper for the City to undertake to clear its principal highways following the heavy snowfall shown by the record herein. Before the City can be said to have been negligent in such operation, "it would seem reasonable to require a showing that there was something practicable which the city could have done." There is no such showing in the record herein. If this issue were submitted to the jury its verdict, if returned against the City, would be based solely upon speculation and conjecture. The court properly held that a verdict must have more than that to sustain it.

There is another feature to be considered. While the allegations of the petition refer to the operations of the snowplow and there was evidence as to such operations, the "defect" in the street is asserted in the original petition and in the amendment to be a hole in the ice and snow commonly called a chuck-hole. Also, the three occupants of the automobile referred only to this hole. Nothing was said about any ridge. It is the hole that is claimed to have caused the injury. This hole is stated to have been between the curb line and the crosswalk. There is no testimony that this hole was caused by

the snowplow. Were the jury to find that it was caused by the snowplow, its verdict would be based solely upon speculation and conjecture.

Also, the hole was filled with water so that its existence was not readily discernible. Plaintiff contends that the City should have discovered the hole and barricaded the street or warned of its presence. A barricade would have blocked the street entirely. The kind of warning to be given is left to speculation.

It is a matter of common knowledge that the City of Des Moines embraces 56 square miles. The enormity of the task of searching out all chuck-holes, filled with water, ascertaining the depth of each, and barricading or otherwise warning travelers of their presence, is indicated by our holding in Ritchie v. City of Des Moines, supra. We think the position there taken should be applied herein. There should be some evidence that such action is possible and practicable before the City can be said to be negligent.

Appellant relies upon Staples v. City of Spencer, 222 Iowa 1241, 1247, 271 N. W. 200, 203, where, in holding that a city was negligent in not sanding a crosswalk, we state:

"We think counsel has overlooked one of the fundamental principles of the law of negligence, namely, the duty to use reasonable care in keeping the crossing in a safe condition and to do this the city certainly was required to use any feasible or practical means at hand. Certainly the city officials, with sand and gravel at hand available for the very purpose of using the same to render slippery and icy crossings less hazardous, could not sit idly by and do nothing under such circumstances."

The holding in the above case is clearly distinguishable. There the evidence supported a finding that the suggested remedy was possible and practicable. Such is not the case here.

The judgment is affirmed.—Affirmed.

HALE, C. J., and MITCHELL, SAGER, OLIVER, WENNERSTRUM, and GARFIELD, JJ., concur.