CLARK COOK, Appellant, v. INCORPORATED TOWN OF HEDRICK, IOWA, Appellee.

Defective sidewalks: CONTRIBUTORY NEGLIGENCE: EVIDENCE. A pedestrian, having only a general knowledge of the defective condition of a sidewalk which has been permitted to remain out of repair, is not guilty of negligence as a matter of law in using the same; but to take the question of his negligence from the jury it must be shown that he knew of the particular danger which he encountered, and that it was imprudent to attempt to pass over the walk on account thereof. Evidence held to take the case to the jury.

*Appeal from Keokuk District Court.—* HON. JOHN T.
SCOTT, Judge.

FRIDAY, JUNE 7, 1907.

ACTION to recover damages for personal injuries re-
ceived by plaintiff while passing over a sidewalk in defendant
town.    The trial court directed a verdict for defendant on
the ground that plaintiff was guilty of such contributory neg-
ligence as barred him of recovery.    Plaintiff appeals.— *Re-
versed.*

*Stockman & Hamilton,* for appellant.

*Talley & Hamilton,* for appellee.

DEEMER, J.— That defendant was negligent in leaving
a hole in one of its sidewalks is practically conceded, and, as
the verdict was directed because of plaintiff's negligence, we
quote from the record the substance of the testimony bearing
upon this proposition.    The accident occurred about half
past six o'clock in the evening of December 3, 1904, and
plaintiff testified as follows:

I had had my supper.    At that time the members con-
stituting my family was myself and my wife.    As I was
walking along going up town, I stepped on a loose board, and
went through; went down into the walk.    I had started to
go to the post office.    It is pretty hard to describe how I
went down.    I went down on my right side, and could not
get out; could not stand on my feet for the reason that it
hurt.    It was numb.    It seemed like it had no feeling.    I
could not use it.    My feet were down in the hole.    The
walks was built with stringers there.    My feet were inside the
stringers.    I, also, felt a pain in my side; could not tell
what hurt my side, whether it was the walk or a loose board
hit it, I cannot tell which.    At the place where the acci-
dent occurred, the walk was put up off the ground about 18
inches or 2 feet.    The first thing I did was to try and get

out of the hole, and when. I could not I called to John Handleman, and Handleman came there.

On cross-examination the witness said:

The place where the injury occurred was between 30 or 35 feet from the west end of the lot. I never measured it. I am guessing about it. It was covered with inch boards, six inches wide. It was dark enough that the lights were lighted, that is, the street lights. You could see the walk. There was a light at each corner, one at the corner of the walk east, and the other upon Main street, at the end of the lot at the drug store; both lights at corners of the same block. There was a hole in the walk at the place I went through, about four feet long and six inches wide. I fell through between the outside stringer and the inside stringer. When I got hurt I was going west. I did nothing with the board I stepped on. It was a six-inch board and an inch thick. There was other holes in the walk east of the one where I went through; I would suppose about 20 feet east. There was two boards out there. It would be 12 inches wide and 4 feet long. These were all the holes I saw that night. I passed over that walk nearly every day; some days I would not. I do not think I had passed over that day. It is likely that I had the preceding day; could not say positively. I do not know how long those holes had been there, likely they had been there two or three weeks. I do not know that they had been there that long. I had noticed loose boards on the walk once in awhile; could not say as to how many times. The ground was dry at that time. I saw Mr. Handleman between one and five minutes after the accident occurred. At the time he came to me I was sitting up on the sidewalk, down in the hole. My feet were not fast. Martin came in a few minutes after Handleman. The board I stepped on that night as I was going west did not break. The south end of it moved up that way (inclining upwards), and the other end down. After I got up, I could not tell anything about where the board was. I did not see it; did not hunt for it. The place where I fell down was inside between the stringers. The board was six inches wide. There was a six-inch board right east of the board that I stepped on out and gone. It was a six-inch

hole there.   There was only one six-inch hole.   There was not holes west to my knowledge.   There was only one board gone.   This hole that I spoke of immediately after my injury was only 12 inches wide.   I stepped over the hole and stepped on this board.   I fell west on the walk.   I was not carrying anything; had a cane in my hand.   The doctor arrived in about 20 minutes or a half an hour.

On redirect, he said:

Q. Well, Mr. Cook, as I understand you, when this accident occurred, in the cross-examination of Mr. Talley, you said you were going west on the sidewalk, and there was a plank out, and you stepped over the hole on the next plank to it, and that is the one that slipped out and let you down? A. Yes, sir.

It thus appears that plaintiff knew there was a hole in the walk, that he endeavored to step over this hole and onto the board beyond, that when he stepped on the board he found it loose, and that it gave way and precipitated him back into the excavation.   There is no testimony that he knew this board was loose, and the evidence shows that, had it been secure, he would have avoided the dangers incident to the defect.   Although a walk is defective, a traveler has a right to pass over the same, and, if he does so, it is generally a question for the jury to determine whether or not in so doing he was in the exercise of due care.   Occasionally, this becomes a question of law for the court; but where, as here, the plaintiff did not know of the loose board, and while in the exercise of due care attempted to avoid an excavation of which he knew, and in so doing was injured, the question is manifestly for a jury.   It is true that the witness said he knew some of the boards were loose, but nowhere did he say that he knew the particular one was unfastened.   We think that the question of plaintiff's negligence was for the jury. See, as supporting these conclusions, *Carter v. Lineville,* 117 Iowa, 532; *Sachra v. Manilla,* 120 Iowa, 562; *Sylvester v. Town,* 110 Iowa, 256; *Barnes v. Marcus,* 96 Iowa, 675; *Van*

*Camp v. Keokuk,* 130 Iowa, 716; *Wheeler v. City,* 131 Iowa, 566.

As already suggested, one has the right to pass over a defective sidewalk without being held guilty of contributory negligence as a matter of law.   If he knows that it is imprudent to do so, and takes his life, so to speak, in his hands, then, of course, he cannot and ought not to charge another with the consequences; but, generally, it is for a jury to say whether or not a party who is injured in passing over a defective street or walk was in the exercise of due care.   Streets and sidewalks are made to be passed over, and, if a town or city is negligent with respect thereto, and a traveler is injured while in the exercise of due care, it is not enough for the city to say that the injured party knew of the defect. Ordinarily, he must know of the particular danger, and, also, know that it was imprudent to attempt to use the defective way.   *Kendall v. Albia,* 73 Iowa, 241.

We think the case should have gone to the jury.

The judgment is therefore *reversed.*