FRANCIS GIBSON, Appellant, v. CITY OF DENISON.

**Municipal corporations:** DEFECTIVE SIDEWALKS: CONTRIBUTORY NEGLIGENCE. A pedestrian using a defective sidewalk which he knew, or as an ordinarily cautious person ought to have known, was imprudent to pass over, and who might at the same time have taken another way equally convenient, was guilty of such negligence as will defeat recovery for an injury caused by the defective condition of the walk.

*Appeal from Crawford District Court.*—Hon. F. M. Powers, Judge.

FRIDAY, DECEMBER 15, 1911.

ACTION for damages resulting from a fall, caused by a defective sidewalk, in November, 1904. There was a trial in September, 1905, at which the jury, by direction of the court, returned a verdict for defendant. Judgment

was entered thereon, and in the month following an appeal to this court was perfected.—*Affirmed.*

*J. F. Glenn* and *P. W. Harding,* for appellant.

*T. V. Walker* and *Conner & Lally,* for appellee.

LADD, J.—It may be conceded that the walk, as alleged in the petition, was "an old, worn-out, rotten, decayed sidewalk, having been laid more than ten years" prior to the injury, and that for many years "the stringers supporting it had become rotten, worn out, and decayed to such an extent that the sidewalk boards nailed thereto would not hold," and were "loose and dangerous to passengers passing over it," and that in maintaining the sidewalk in this condition, the defendant was negligent. The sole inquiry is whether it conclusively appeared from the evidence that plaintiff by his own negligence contributed to his injury. Sweet street in the defendant city extends south of the Northwestern Railroad track, immediately beyond which there is a steep grade sloping to the south. On the west side of the street, down this incline, was the sidewalk in question, one hundred and sixty-five feet long. The highway was level, graveled, and cindered, and extended on to the south past plaintiff's home.

The plaintiff testified that: "I knew that it always had been an unsafe walk, and on the date named I got on this sidewalk going to my home; just dropped in behind Harry Warmouth, a young man who was with me, and about a step ahead of me. He was walking on the outside, and I towards the center. He tipped up a board that did not seem to be fastened. My left foot went under it, and in struggling to get my foot loose I fell forward. Getting my foot out threw me on my side, and I struck with my full weight on the end of the plank."

On cross-examination:

Before this accident happened I could see as well as any common man, and there was nothing to hinder me from seeing the highway as it was, and as I did; nothing to hinder me from seeing the railroad tracks. And the only difference between taking the sidewalk and taking the highway from the railroad tracks to my home is that I could take the highway at the south side of the railroad track and at the north end of the sidewalk, and follow it all the way to my home; or I could take the sidewalk and follow it one hundred and sixty-five feet, and then cross a ditch at the south end of the walk, and go over to the highway, and I had to take the highway the rest of the way home. This I understood all the time; and when going from my home uptown I either had to go up the highway to the track, or else cross the ditch, and go over to the sidewalk and take it up to the track. And I knew that the highway was practically safe to travel, unless it was muddy or obstructed by teams, and that there was nothing that I remember of to prevent me going over on the road, if I had wanted to do so; and by going about fourteen feet from the north end of the sidewalk, on a perfectly level ground, I would have reached the highway; or I could have gone diagonally from eighteen to twenty-five feet from the end of the approach leading up to the railroad track southeasterly, on practically level ground, to the highway. There was nothing to hinder me from seeing that the ground running along this sidewalk and on the east side of it was level. . . . I knew the sidewalk was in bad condition when I went on it that day. I had known it before, and it was in bad condition. I knew it was in a dangerous condition, and that it was dangerous and unsafe for me to walk on it; and by 'unsafe' I mean a person might get hurt by walking on it, if he did walk in the center of it, and I knew and felt that the sidewalk itself was unsafe, for it jiggled up and down. This sidewalk jiggled up and down, and a sidewalk that jiggles up and down is because the stringers are weak. I did not consider that kind of a walk safe any place. I did not consider it in a safe condition, whether in the center or on the side of it; but it is safer in the center than in any other place. In addition to this, the boards were loose, and this I knew before, by the way they moved under my feet, that they were not solid. I

knew that before I went on there that day, but I went all the same. Yes; the boards *were loose, and knowing they were loose, and knowing that the stringers were unsafe and jiggled up and down, I went upon the walk as I say I did.*

He then explained that Warmouth was not in the center of the walk until he stepped off the board which flew up, and that the boards seemed all right, but there was nothing to nail them to. On redirect examination he testified that: "The reason I attempted to walk over the sidewalk, although I knew it was dangerous, is that I knew I could pass over it safely with care." On recross-examination he swore that: "All the time as I was approaching this walk the day I was injured, and as I went upon it, I knew it was dangerous; I knew it was not a safe walk; and I knew I had to be extremely careful to avoid something happening. Yes; that is so; and at the same time I knew the public highway run there, as I have described it, without any change."

The evidence was such as to exclude all doubt as to whether plaintiff appreciated the danger of passing over the sidewalk. In going to and from the business portion of the city, he necessarily took the well-graveled and cindered highway between his house and the short walk near the railroad track, and, as he knew the walk was dangerous, and that he "had to be extremely careful to avoid something happening" if he walked over it, he was negligent in attempting to do so, instead of continuing to the railroad track in the traveled portion of the highway. *Reynolds v. City of Centerville,* 151 Iowa, 19.

The proposition that a traveler who knows, or as an ordinarily cautious person ought to know, that it is imprudent to pass over a defective sidewalk, and does so, although he might have taken another path or course equally convenient and in the same direction, is guilty of such negligence as will defeat recovery for damages in event of injury, caused by the dangerous condition of the

walk, is well settled by the authorities. *McGuity v. City of Keokuk,* 66 Iowa, 725; *Parkhill v. Town of Brighton,* 61 Iowa, 103; *Hartman v. City of Muscatine,* 70 Iowa, 511; *Cosner v. City of Centerville,* 90 Iowa, 33; *Cook v. Town of Hedrick,* 135 Iowa, 23.

As pointed out in *Reynolds v. City of Centerville, supra,* to defeat recovery, it is not enough that the walk was unsafe for travel, and the plaintiff appreciated the danger, but it also must appear that he knew, or as an ordinarily prudent person ought to have known, that it was imprudent for him to walk over it. That with such knowledge plaintiff did so is fully established by his own testimony.

It follows that the court rightly directed the jury to return a verdict for defendant.—*Affirmed.*