Nelle M. Beach, Appellant, v. City of Des Moines, Appellee.

No. 46723.

February 11, 1947.

Rehearing Denied April 11, 1947.

Brammer, Brody, Charlton & Parker and Chauncey A. Weaver, all of Des Moines, for appellant.

F. T. Van Liew, B. J. Flick, Paul Hewitt, Harvey Bogenrief, and Vernon R. Seeburger, all of Des Moines, for appellee.

BLISS, J.—This opinion supersedes those in 21 N. W. 2d 677, and 24 N. W. 2d 342. A rehearing was granted on each of these appeals and the opinions therein were set aside.

The plaintiff, a maiden lady, had made her home at No. 715 on the north side of Clark Street just west of Seventh Avenue in the defendant city, from December 1, 1939, until August 16, 1942. Clark Street extends east and west and is intersected at right angles by Sixth Avenue and Seventh Avenue. In going to her daily work and to church on Sunday she would walk from her home eastward, on the sidewalk on the north side of Clark Street, across Seventh Avenue, and then east to Sixth Avenue, where she would take a southbound curbliner bus at the northwest corner of the intersection of Clark Street and Sixth Avenue. In returning home she would get off the bus at the southeast corner of the intersection and cross to the northwest corner and go west on the sidewalk on the north side of Clark Street. She conceded that she may have passed over the defective sidewalk eighteen hundred times while living on Clark Street.

In passing upon the court's direction of the verdict we view the evidence in the light most favorable to appellant. There is nothing inherently improbable or unbelievable in the evidence, and it and all reasonable inferences therefrom must be accepted at their face value in determining whether the appellant made a case submissible to the jury. There is no contradiction of evidence offered in her behalf.

Appellant was severely and permanently injured. Her left

hip and left forearm were broken. She was in a hospital several months. She was still suffering much pain at the time of trial, over two years after the injury. She was unable to work for a long time. She will always need artificial aid in walking. The traumatic arthritis in her left hip will become progressively worse.

A photograph of the sidewalk showing where appellant fell and a view along it to the westward on Clark Street is here reproduced.

The top of the photograph, at the top of the page, is west on the ground, the bottom is east, and the right side is north. The photograph confirms the description of the defective sidewalk as given by the appellant and her witnesses. The cement slab of the walk was four feet wide. The north-south alley is shown a short distance east of the fence. About six feet east of the alley was a break in the sidewalk—a rectangular hole, about two feet by a foot and a half, in the south half of the walk. East of this hole was another break in the sidewalk. It approximated roughly in outline an equilateral triangle with a three-foot base on the south line of the sidewalk, and its bulging sides culminated in an apex sixteen inches or less from the north line of the sidewalk. According to the testimony, and as shown by the photograph, a heavy growth of vegetation encroached upon and covered about four inches of the sidewalk along the north side thereof, thus narrowing to about twelve inches the unencumbered and unbroken space north of the apex of the hole.

Appellant described the condition of the sidewalk between the alley and the place of her fall thus:

"As you left the edge of the alley a good many cracks crisscross back and forth and from about six feet from the east edge there was a hole, not a very large hole, but it extended almost half way across the sidewalk. * * * Out along six or seven feet from the first hole there was another hole that was roughly rectangular—the base was at the south edge of the walk. There was not any walk there but the base was on that. This place extended about two-thirds of the way across the sidewalk east [northeast]."

Describing the westerly edge of this hole, she testified:

"Well, jagged and rough, and of course it was not wholly straight; it curved in some places, but there was no sidewalk there, the surface of the sidewalk."

Asked how deep it was on the westerly side of the hole from the surface of the sidewalk down to the bottom of the hole, she said:

"Well, I think it varied from an inch and a half to two and a half inches."

Two schoolteachers corroborated the testimony of appellant respecting the condition of the sidewalk, and the character, size, and depth of the holes. Each had been familiar with these matters for several years. One, speaking of the large hole, where appellant fell, testified:

"It extended anyway two-thirds of the way across the walk. This broken place extended along the south margin of the walk about three feet. I think the depth of this hole would vary, right at the point of the hole it was about an inch, and then about two inches. This depth begins an inch and a half to two inches from the point of this hole, the apex of the hole, and there was a ditch and this ditch extended along the bottom of this ledge or break, and that showed that it had loose gravel,—loose pieces in it that were curved. * * * I would say that the hole had been in that sidewalk two or three years."

She testified on cross-examination that sometimes when she walked through this hole, "I took care because I knew it was bad."

Appellant testified that she was familiar with the condition of the walk at the time she fell. She knew the location and character of the holes and other defects in it. In using the sidewalk she had always tried to avoid them. She had never fallen on this sidewalk before the time of her injury.

August 16, 1942, was Sunday. It was a pleasant afternoon. The sun was shining brightly. She was going north on Sixth

Avenue to dine with friends. She left her rooming place and walked east on the sidewalk in question. She was not mentally disturbed about anything, and nothing diverted her attention from the matter of proceeding along this sidewalk. She testified:

"It was shortly before 4:30 o'clock in the afternoon. I took the north side of the sidewalk just as I always have—the smoother side. * * * this large hole was almost the width of the sidewalk, but tapered off, that is perhaps the distance of the width of the sidewalk up near the apex of that big hole, when I left the east edge of the alley and took the north side of the sidewalk to walk on. * * * Q. *Did you believe, Miss Beach, that by taking this path of travel you have mentioned that you could walk safely along the walk? A. Yes, sir. Q.* On this August 16, 1942, *as you walked along this walk, where were you looking? A. I was looking down at the sidewalk. Q. In looking down at the sidewalk for what reason? A. For the sake of safety so I could see where I was going. Q.* Tell the jury what happened. A. Well, as I was going along this sidewalk, the usual path, almost at the very narrowest portion of the smooth part of the walk, *my heel slipped into this hole and caused me to lose my balance and to stumble. I stumbled several times* all the time thinking that I couldn't let this hole get me now *after having been so careful for more than two years.* There wasn't any use. I found myself going down and I threw out my arm to protect my face from possibly broken glasses. I made a three point landing on the sidewalk. * * * *It was the heel of my right foot which went off the edge right at the apex of the hole right at the narrowest part of the sidewalk. I felt my heel go into the break in the sidewalk. It was a decided feeling.*"

In a long cross-examination the foregoing testimony was repeated without material variance. She testified that her heel slipped off the rough, broken edge of the hole and went down an inch and a half near the apex of the hole and on the west side of it. She made a cross with ink on the photograph, herein reproduced, to indicate the place. She was walking carefully, in her customary manner, along a narrow part of the sidewalk

abutting the northwesterly edge of the hole. Surrounding the entire hole except on the south side of it was a jagged, irregular edge elevated above the uneven bottom of the hole approximately an inch to two and a half inches. A heavy growth of grass and weeds grew under the protecting ledge along a considerable part of the westerly side and a small portion of the east side of the hole. The testimony and the photograph indicate that the bottom of the hole consisted of disintegrated concrete with scattered gravel or pieces of hard cement. There was a "sort of trough, something been washed out," as the appellant expressed it.

Appellee's motion for a directed verdict contained eleven grounds but only two were argued to the trial court. These were: first, failure to establish any negligence on the part of the city which was a proximate cause of appellant's injury; and, second, failure to show her freedom from contributory negligence. The court denied the first ground and held that the issue of the city's negligence was for the jury. It sustained the second ground, and also grounds five and six of the motion, and made no reference or finding respecting the other grounds of the motion. There was no merit in any ground ruled on.

The city has not appealed. It excepted to the court's ruling on the issue of its negligence, and seeks to sustain its contention by argument in this court. It took no exception to any other ruling. And while, under the heading, "Questions Presented On Appeal," in its printed argument, it lists grounds 7, 8, 9, 10, and 11 of its motion to direct as other matters to be presented on the appeal, it mentions none of them in the argument which followed.

Appellant assigned and argued three errors. We discuss the two bearing upon the issues of negligence and contributory negligence.

I. Did the court err in denying appellant the right to submit to the jury the issue of her freedom from contributory negligence?

On January 11, 1947, appellee filed a brief and argument additional to those theretofore filed by it. Therein it reasserts

its previous contentions: first, that the record discloses the exercise of no care by the appellant; second, that she was required to exercise such care as would have avoided contact with the defect which caused her injuries. The first is a misstatement of fact which has no basis in the record. The second is a misconception of law which has no sound basis in authority or precedent. All that was required of her as she proceeded over this sidewalk was to exercise ordinary care—the care of an ordinarily careful, prudent, cautious person under the same or similar circumstances. She was not required to use such care as would have absolutely precluded injury and insured her safety. It was her duty to use reasonable care only, under the circumstances, and in the light of her knowledge of the defects and their danger. The law did not demand the exercise of perfect care by her. Appellee states that she used not the slightest care; that she would not have slipped off the edge of the hole had she used greater care. That is not a matter in issue in cases of this kind. It is not whether greater care would have avoided the injury but whether the care used was ordinary care under the circumstances. There would never be results of this kind, nor any actions to recover damages because of negligence, if every person would use such care as to avoid the mishap. Appellee argues that she should have shortened or lengthened her stride slightly or varied its direction a trifle. It is easy to look back and say that had she done so she might not have fallen. Such criticism of a slight miscalculation comes with poor grace from one that had permitted this defective sidewalk to remain for two or more years a potential hazard to all who used it. The appellant was bound to use reasonable, ordinary care. She was not required to use extraordinary care. The fact that she fell is not conclusive proof of contributory negligence. As said by this court many years ago, in Hanlon v. City of Keokuk, 7 (Clarke) Iowa 488, 490, 74 Am. Dec. 276, 277:

"The test of extraordinary care seems to throw the whole responsibility all on one side, and that the side of one who had no agency in causing the obstacle. Such a rule is manifestly unjust."

See, also, Markle v. Chicago, R. I. & P. Ry. Co., 219 Iowa 301, 308, 257 N. W. 771, 775, wherein the court said:

"Under the doctrine of contributory negligence, it is not necessary for plaintiff to show that he exercised the highest degree of care, or that the care exercised by him was perfect. He was only required to exercise ordinary care."

Likewise, in McKern v. Wabash R. Co., 195 Iowa 410, 412, 192 N. W. 152, 153, the court said:

"Perfect care or judgment is not given to mankind, and if a person being exposed to danger conducts himself with the caution which may reasonably be expected of a person of ordinary prudence and ordinary presence of mind, he is not to be charged with fault, even though, as a matter of cool afterthought or mature consideration, he might better have done otherwise."

See, also, Upton v. Hines, 193 Iowa 385, 389, 390, 185 N. W. 561, 562.

Neither is a person contributorily negligent as a matter of law because his physical movements are not perfect in execution or co-ordination. The expert marksman does not always hit his target. As said by the court, in the words of Weaver, J., in Toney v. Interstate Power Co., 180 Iowa 1362, 1378, 163 N. W. 394, 400:

"He is not held to an ideally high standard of care as being free from all grounds of criticism. It is enough if the evidence be such that the jury may properly say that he acted as carefully as ordinary men of ordinary judgment and experience usually do under like circumstances."

When the appellant approached the large hole in the sidewalk she had been walking, for a distance of perhaps ten feet, along the north half of the sidewalk west of the apex of the hole, where the smoother portion was wider than at the apex. As she neared and reached the apex, her path narrowed to a width which the jury might have said was approximately a foot, and, as she attempted to avoid the hole and confined her steps to this narrow path, the heel of her right shoe contacted the jagged,

elevated edge of the hole, and in slipping off she became un-
balanced and stumbled in the hole until she went down. The
city says that this conduct of hers made her conclusively con-
tributorily negligent. We cannot go so far. In earlier arguments
the appellee asserted, without basis, that appellant offered "not
a line," "not a scintilla of evidence" as to her care. Equally
unfounded are the statements in the last-filed brief of appellee,
that, "instead of turning out she attempted to walk over it"
(the hole), "without thought or attention," she "did nothing to
avoid stepping over the defect, or passing around it," she "did
nothing to show her freedom from contributory negligence."
By quotation from Bender v. Incorporated Town of Minden,
124 Iowa 685, 690, 100 N. W. 352, 354, they charge appellant,
by intimation, of "mental abstraction or heedlessness." Like-
wise, the city applies to appellant these words of Lamm, J., in
a concurrence in result, in Ryan v. Kansas City, 232 Mo. 471,
487, 134 S. W. 566, 570, to wit:

"He cannot shut his eyes, or blindfold himself, or walk
backward, or not look about him at all, or, under the assump-
tion that no defects exist, walk heedlessly into obvious ones."

The language or thought in these quotations has no appli-
cation or pertinence to the appellant's conduct. We note in the
opinion of Judge Lamm, supra, at the same page, these words:
"He need not be watching at every footfall for defects, but he
should act like a prudent person, who makes reasonable use of
his eyes while walking." In the majority opinion in the same
case (page 483 of 232 Mo., page 569 of 134 S. W.), Judge Graves
said:

"Nor does it mean that the pedestrian must keep his eyes
riveted upon the sidewalk at each step of his progress. Ordi-
narily prudent and careful persons do neither. Such persons are
not star-gazing, nor are they guarding each individual step
they take."

Appellee also states, in its last argument, that, "Appellant
Beach contends that if she believed she could pass over the
defect in safety she was not required to exercise care in avoiding

it.'' The record shows no such contention by appellant. Appellee also urges that, ''There is nothing in the evidence of plaintiff indicating that she could not have avoided the defect *if she desired to do so.*''

Although appellant offered substantial evidence from which the jury could find that she used reasonable care for her own safety, direct affirmative proof of acts constituting due care was not required. Gregg v. Town of Springville, 188 Iowa 239, 246, 247, 174 N. W. 23. No one saw appellant when she fell or just prior thereto. Her own testimony bears directly upon the care she used. On the day of her fall, as on previous days, she chose a ''particular course or path of travel'' on the north part of the sidewalk, because it was the smoother and safer. On this occasion, as on all other occasions, she sought to avoid the holes. She never intentionally walked through, across, or over them. By avoiding them and going along the narrow path she believed she could walk safely along the sidewalk. Her mind was on her walking. Nothing diverted her therefrom. She was looking down at the sidewalk at all times. When asked why she did this, she replied that it was ''for the sake of safety so I could see where I was going.'' Was this ''no act of care to preserve her own safety''? Was this the failure to ''exercise any care in passing over this sidewalk''? A jury might well find that it was the usual conduct of a reasonably prudent and careful person. She saw the larger hole ahead of her and purposely sought to avoid it. She did not walk into this hole. She missed it entirely except for a small portion of the heel of her right shoe. When her heel slipped off the edge, or a portion of it broke under her heel, she became overbalanced and stumbled. She did not know on what she stumbled. But it was for the jury to say whether the objects over which she stumbled and which finally threw her to the sidewalk were or were not the depression in the hole, or the disintegrated concrete there, or the elevated and jagged edges of the hole, all caused by the city's negligence. They were at her feet while she was stumbling and trying to keep from falling and could reasonably have been found to have been the proximate cause of her injuries.

It was not merely the small triangular apex of the hole which she was trying to avoid but it was also the remainder of the hole of several square feet which occupied all of the sidewalk at that place except the narrow strip at the north side.

On the issue of appellant's contributory negligence the city relies principally upon the fact that she was very familiar with the condition of this sidewalk. It particularly stresses the fact that she had passed over it hundreds of times in the almost three years she had lived on Clark Street and in doing so had knowledge of its defects. But such conduct and such knowledge did not make her contributorily negligent, as a matter of law, in attempting to pass over the sidewalk at the time of her injury. This court has never departed from its early-announced rule, that knowledge of defects in a sidewalk, alone, is not sufficient to bar a pedestrian of recovery for injuries caused by such defects. It must also be shown that the injured person knew, or as an ordinarily prudent and careful person should have known, that it was imprudent to try to pass over the sidewalk. As said, in Graham v. Town of Oxford, 105 Iowa 705, 709, 75 N. W. 473, 474:

"But it is not true that one who knows of a defect in a walk is necessarily guilty of negligence if he attempt to pass over it. Much depends upon the character of the defect, the occasion for passing over it, and the care used in doing so. If a person knows of a defect in a walk, but believes that it can be passed in safety by the exercise of ordinary care, and he is justified as a reasonably prudent man in holding that belief, he is not negligent in attempting to pass over it in an ordinarily careful and prudent manner."

Other of our decisions declaring this rule to be the law are: Kendall v. City of Albia, 73 Iowa 241, 248, 249, 34 N. W. 833; Hollingsworth v. City of Fort Dodge, 125 Iowa 627, 631, 101 N. W. 455; Arnold v. City of Waterloo, 128 Iowa 410, 411, 104 N. W. 442; Clark v. City of Cedar Rapids, 129 Iowa 358, 361, 105 N. W. 651; Evans v. City of Iowa City, 125 Iowa 202, 205, 206, 100 N. W. 1112; Woodard v. City of Des Moines, 182 Iowa 1102, 1104, 1105, 165 N. W. 313; Byerly v. City of Anamosa, 79

Iowa 204, 206, 44 N. W. 359; Ross v. City of Davenport, 66 Iowa 548, 550–552, 24 N. W. 47; Fountain v. City of Des Moines, 164 Iowa 316, 321, 145 N. W. 881; Neeley v. Incorporated Town of Mapleton, 139 Iowa 582, 585, 586, 117 N. W. 981; Waud v. Polk County, 88 Iowa 617, 619, 620, 55 N. W. 528; Sachra v. Town of Manilla, 120 Iowa 562, 568, 95 N. W. 198; Norris v. Cudahy Packing Co., 124 Iowa 748, 751, 100 N. W. 853; Brown v. Incorporated Town of Chillicothe, 122 Iowa 640, 642, 98 N. W. 502; Harvey v. City of Clarinda, 111 Iowa 528, 533, 82 N. W. 994; Nichols v. Incorporated Town of Laurens, 96 Iowa 388, 390–394, 65 N. W. 335; Smith v. City of Hamburg, 212 Iowa 1022, 1024–1027, 237 N. W. 330; Thompson v. City of Sigourney, 212 Iowa 1348, 1352, 237 N. W. 366; Sylvester v. Town of Casey, 110 Iowa 256–260, 81 N. W. 455; Hoover v. Town of Mapleton, 110 Iowa 571–574, 81 N. W. 776; Considine v. City of Dubuque, 126 Iowa 283, 285, 286, 102 N. W. 102; Jackson v. City of Grinnell, 144 Iowa 232, 235, 236, 122 N. W. 911; De Wall v. City of Sioux City, 181 Iowa 333, 336, 337, 164 N. W. 640; Travers v. City of Emmetsburg, 190 Iowa 717, 719, 180 N. W. 753; Van Camp v. City of Keokuk, 130 Iowa 716, 719, 107 N. W. 933; Stevens v. City of Chariton, 184 Iowa 59, 66, 168 N. W. 310; Dillehay v. Minor, 188 Iowa 37, 42, 175 N. W. 838, 11 A. L. R. 106; Tollackson v. City of Eagle Grove, 203 Iowa 696, 699, 700, 213 N. W. 222; Burke v. Town of Lawton, 207 Iowa 585–591, 223 N. W. 397; Crandall v. City of Dubuque, 136 Iowa 663, 665, 666, 667, 112 N. W. 555; Hanson v. City of Anamosa, 177 Iowa 101–107, 158 N. W. 591; McGee v. Jones County, 161 Iowa 296, 299, 142 N. W. 957, 48 L. R. A., N. S., 141; Cook v. Town of Hedrick, 135 Iowa 23–27, 112 N. W. 157; See v. Wabash R. Co., 123 Iowa 443, 446, 99 N. W. 106.

In most, if not all, of the cases cited above, the plaintiff, or injured person, *had knowledge merely* of the defective condition. That is the situation in the case before us. There is no direct evidence, or admission on her part, that she knew or appreciated that the sidewalk was unsafe or that it was dangerous to attempt to pass over it. It is not necessary to go so far in this case, but this court has many times held that the fact that the injured person knew the sidewalk was unsafe or dangerous

—and the terms mean the same—does not, as a matter of law, demand a holding that he was contributorily negligent. In Geagley v. City of Bedford, 235 Iowa 555, 561, 16 N. W. 2d 252, 256, decided within the year, speaking through Justice Smith, the court said:

"It seems clear from all the cases we have examined, including those cited by appellant, that mere knowledge of the *danger,* before attempting to pass over it, is not conclusive evidence of contributory negligence: 'She may have known that the way was icy and slippery; yet, if she reasonably believed that, by using care, she could make the passage in safety, she was not negligent.' Travers v. City of Emmetsburg, 190 Iowa 717, 719, 180 N. W. 753, 754. See, also, Tillotson v. City of Davenport, 232 Iowa 44, 4 N. W. 2d 365. The test seems to be whether a plaintiff, *knowing of the dangerous condition,* believes and has a right as a reasonably prudent person to believe that by the exercise of ordinary care the dangerous place may be passed in safety. [Citing cases.]" (Italics ours.)

In Tillotson v. City of Davenport, supra, 232 Iowa 44, 46, 4 N. W. 2d 365, 366, through Justice Stiger, the court said:

"It is well settled that mere knowledge that a walk is dangerous, unsafe for travel, is not sufficient to establish contributory negligence though there is another way that is safe and convenient, and to defeat recovery it must appear that the traveler, knew, or as an ordinarily cautious person should have known, that it was imprudent to use the walk. [Citing cases.]"

Other decisions, holding that mere knowledge that a walk or passage is dangerous and unsafe for travel is not necessarily negligence in the pedestrian unless he knows or in the exercise of ordinary care should know that it is imprudent to use it, are: Franks v. City of Sioux City, 229 Iowa 1097, 1102, 296 N. W. 224; Smith v. City of Hamburg, supra, 212 Iowa 1022, 1026, 237 N. W. 330; Templin v. Incorporated City of Boone, 127 Iowa 91, 94, 95, 102 N. W. 789; Jones v. Shelby County, 124 Iowa 551, 555, 100 N. W. 520; Houseman v. City of Belle Plaine, 124 Iowa 510–513, 100 N. W. 343; Nichols v. Incorporated Town of Laurens, supra, 96 Iowa 388, 393, 65 N. W. 335;

Walker v. Decatur County, 67 Iowa 307, 309, 25 N. W. 256; Stevens v. City of Chariton, supra, 184 Iowa 59, 66, 168 N. W. 310; Cook v. Town of Hedrick, supra, 135 Iowa 23, 27, 112 N. W. 157; Bailey v. City of Centerville, 115 Iowa 271, 272, 274, 88 N. W. 379; Van Camp v. City of Keokuk, supra, 130 Iowa 716, 719, 107 N. W. 933; Gibson v. City of Denison, 153 Iowa 320, 324, 133 N. W. 712, 38 L. R. A., N. S., 644; Covert v. Town of Lovilia, 167 Iowa 163, 165–167, 149 N. W. 67; Hall v. City of Shenandoah, 167 Iowa 735, 741, 149 N. W. 831; Staples v. City of Spencer, 222 Iowa 1241, 1246, 1247, 271 N. W. 200; Considine v. City of Dubuque, supra, 126 Iowa 283, 285, 102 N. W. 102.

There is in this record no evidence, nor reasonable inference, that appellant knew the sidewalk was so unsafe or so dangerous that it was imprudent for her to attempt to pass over it. The fact that she had passed over the sidewalk so many times is convincing evidence that she did not consider it imprudent to do so at the time she fell. In Woodard v. City of Des Moines, supra, 182 Iowa 1102, 1105, 165 N. W. 313, 314, the court said:

"In order to constitute such action on plaintiff's part contributory negligence, it must further appear that she knew it was imprudent for her to use the steps; and this cannot be so held as a matter of law, unless she admits such knowledge on her part, or it is shown by other evidence so conclusively that she will not be heard to deny it. There is no such showing here."

Neither is there such a showing in the case before us.

No doubt the appellant realized the possibility of falling in walking upon this sidewalk. But she also believed, as she testified, and as a reasonably prudent and cautious person she was justified in believing—at least, a jury might fairly so find —that by being careful and watchful she could avoid the holes and the possibility of any mishap and proceed along the sidewalk in safety. And a jury might fairly find there was neither evidence nor inference that, on August 16, 1942, or at any other time, she believed the danger of injury to her was so probable,

imminent, or certain that it was imprudent for her to attempt
to pass over the sidewalk. A jury might also fairly find that
there was warrant for an ordinarily careful and prudent person
to believe that it would not be imprudent to attempt, with care
measured by the condition of the sidewalk, to use it. As said
in Neeley v. Incorporated Town of Mapleton, supra, 139 Iowa
582, 585, 586, 117 N. W. 981, 982:

"There is no evidence that the plaintiff believed that it
would be imprudent to pass over the walk. On the contrary,
she testifies otherwise. Although she knew of its alleged defec-
tive condition, she had passed over it many times in safety,
and believed that she could do so at the time in question. This
court has held repeatedly that this would not constitute con-
tributory negligence as a matter of law."

In Covert 'v. Town of Lovilia, supra, 167 Iowa 163, 167,
149 N. W. 67, 68, the plaintiff knew of the defective condition
and thought it was bad, but had passed over it before in safety.
The court said:

"* * * and her belief, as testified to by her, that she
could then pass over it by being careful *introduced in the case
the element of fact, to be determined by the jury alone, as to*
*whether she appreciated the danger and was imprudent in at-
tempting to use the walk."* (Italics supplied.)

The appellee does not dispute the principle of law stated
or followed in the decisions cited above. It cites no decisions
of this court which criticize in any way such rule or principle
of law. There are none. But it seeks to avoid the rule in this
case by arguing that it has no application under the facts in
this case, or to defects in a cement sidewalk, such as the record
herein shows. It contends—chiefly in the argument last filed
—that the rule of reasonable belief that the defective walk may
be passed in safety applies only to icy-sidewalk cases. It states
the novel theory thus:

"The principle that if the plaintiff believed she could pass
over the defect in safety does not apply in open, patent and
easily discernible defects in cement walk cases where the defect

is the same after the accident as before. * * * We have pointed out that icy sidewalk cases are different from the case at bar as icy walks have the element of slippery and latent qualities which subject a pedestrian to danger and uncertainty as to safety in walking over the slippery surface. * * * We submit that there is a plain distinction in the authorities between ice cases, slippery surface cases, rotten boards, planks or stringer cases and the situation in the Beach case''—a defective cement-sidewalk case.

The appellee cites no authority or precedent, and advances no sound reason in support of its propositions. No decision of this court has ever made the distinction contended for by the appellee. It has applied the rule contended for by appellant to all defective-sidewalk cases alike and without distinction or discrimination, where the defect was known to, or within reasonable apprehension by, the person injured, without regard to whether the defective sidewalk or street condition was due to ice and snow which had been permitted to become ''rough, rounded, or ridged,'' or to a general defective condition due to the failure to use ordinary care to keep the sidewalk or street reasonably safe. It is one of the premises or elements of the rule that there be knowledge of the defect and of the chance of injury therefrom. The care on the part of the city or town is fixed by statute, as well as by common law. Section 389.12, Code, 1946 (5945, Code, 1939) provides:

''They [cities and towns] shall have the care, supervision, and control of all public highways, streets, avenues, alleys * * * and shall cause the same to be kept open and in repair and free from nuisances.''

The statute makes no distinction in the character of the defect, or the nature of the substance which makes the defect, or in the particular type of nuisance. A hole in a sidewalk may be a defect and a dangerous condition whether it is made by the melting and freezing of snow or ice and the long-continued tramping of feet, or whether it is in a cement sidewalk

which from continued neglect has become a potential menace to the safety of pedestrians. The "rough, rounded, or ridged" rule as to ice and snow arose with respect to the negligence of the city or town. It was never intended to have, and has no, particular or peculiar application to the contributory negligence of a pedestrian. In the case before us the dilapidated condition of the sidewalk existed for two years, eight months, and fifteen days, on a long-established, much-traveled, built-up residence street, in a block just off Sixth Avenue, which defective condition the city remedied after appellant fell. Everyone knows that ice is slick and slippery, and is dangerous footing, and when a person enters upon a sidewalk covered with ice, whether it be smooth or trampled, he knows that he may slip and fall at any and every place upon it. And yet this court, under those conditions, has repeatedly said that if the pedestrian entering upon a sidewalk in that icy condition, though he knew of the conditions and appreciated the dangers, believed, and was reasonably warranted in so believing, that he could travel it safely, he was not contributorily negligent, as a matter of law. These decisions are not because the defect was an icy condition, as urged by the appellee, but because the rule applies in all cases, regardless of the particular nature of the negligence which permits the existence of the defective condition.

Appellee contends that appellant was conclusively negligent in attempting to step over the hole instead of passing around it. We think the evidence shows—at least, the jury could fairly find—that appellant was passing around the hole when she slipped into it. But if it were a fact that she deliberately and intentionally was attempting to step over the apex of the hole when she fell, this would not convict her of contributory negligence—certainly not as a matter of law. The Supreme Court of the United States, in Mosheuvel v. District of Columbia, 191 U. S. 247, 24 S. Ct. 57, 48 L. Ed. 170, disagreed with the contention of the appellee herein, in deciding the identical point, in a case involving similar circumstances. Mr. Justice White spoke for the court and discussed the question at length. The plaintiff was injured by a fall on a side-

walk of the District. In leaving her abode it was necessary to descend three steps to the sidewalk. About midway of the lowest step and in the sidewalk was what is described as an open "water box," apparently a cut-off box. It was an iron box about four inches square with its top below the tread of the last step and its outer edge was four inches from a line drawn from the tread of the step nearest the sidewalk to the ground. In reaching the sidewalk one could step from the tread of the lowest step over the box or he could step down to the sidewalk at either side of the box. Had the plaintiff stepped down from either side she would not have struck the box, but she chose to step over the box—a step of only four inches. The trial court directed a verdict for the defendant at the close of all of the evidence on the ground of the contributory neglect of the plaintiff. The Court of Appeals of the District affirmed. Mosheuvel v. District of Columbia, 17 App. D. C. 401, 405. The latter court thus states the facts:

"It appeared in evidence that a lady had stumbled over the obstruction in the early summer of 1899, and that the plaintiff herself had stumbled over it once before, although, as she testified, she always tried to be careful and usually went to one side or the other, and not over the box * * * On the day of the accident mentioned in the declaration the plaintiff was going out to visit a neighbor at an adjacent house. She testifies that from the time she left her door, she had the box in view a part of the time, and had it in mind all the time and remembered its dangerous character; but that on this occasion she attempted to step over it, instead of going to one side, and did not take a sufficiently long step, and put her foot into the hole and was thrown, with the result that she suffered serious injury."

Mr. Justice White, in reversing, said in Mosheuvel v. District of Columbia, supra, 191 U. S. 247, 254, 257, 24 S. Ct. 57, 59, 48 L. Ed. 170, 173:

"Were the undisputed facts * * * of such a nature as to compel every reasonable mind to draw the inference that the plaintiff had been guilty of contributory negligence?"

After commenting upon an affirmative answer, the opinion continues:

"We are of the opinion, however, that the rule as thus contended for is unfounded in reason and unsupported by the weight of authority. When analyzed the proposition comes to this, that no person can, as a matter of law, without assuming all the risk, use the streets of a municipality where he knows of a defect therein, even although it be that in the exercise of a sound judgment, it might be deemed that with ordinary care and prudence the street could be used with safety. The result of admitting the doctrine would be to hold that all persons in making use of the public streets assumed all risks possibly to arise from every known defect or danger. * * * Indeed, the proposition would imply that every one who used the public streets with the knowledge of a defect existing therein would be guilty, if an injury was by them suffered as a result of such defect, of contributory negligence without the existence of any neglect whatever; for this would necessarily result from saying that one who had made a careful use of the streets was yet guilty of neglect in doing so. Reduced to its last analysis, the principle contended for but asserts that the ordinary rules by which negligence is to be determined do not apply to the use of the public streets, since those who use such streets with a knowledge of a possible danger to arise from a defect therein must, as a matter of law, have negligence imputed to them, although in choosing to make use of the streets and in the mode of use the fullest possible degree of judgment and care was exercised. The result of this would be to relieve the municipality of all duty and consequent responsibility concerning defects in highways, provided only it chose to give notice of the existence of the defects. * * *

"Concluding, as we do, that the fact that the plaintiff, when she elected to descend the steps from her residence to reach the sidewalk, had knowledge of the existence of the uncovered water-box at the foot of the steps, was not alone sufficient to charge her with contributory negligence as a matter of law, it follows that the judgment below was erroneous if it rested

upon such theory. But as the knowledge of the existence of the defective water-box would have been sufficient to impute contributory negligence per se, as a matter of law, if the hazard resulting therefrom to one seeking to pass over it from the steps was so great that no reasonably prudent person would have made the attempt, it remains only to consider the case in that aspect. Of course, from that point of view the question is, Did the facts proved as to the situation of the water-box and the attempt of the plaintiff to step across it from the stoop so conclusively give rise to the inference of a want of ordinary care in making the attempt, that no reasonable mind could draw a contrary conclusion? This question is readily answered when it is seen that the undisputed fact was that the water-box at its outer edge was only about four inches from a line drawn from the tread of the step nearest the sidewalk to the ground.* * *

*"The conclusion just stated is not affected by the contention that when the plaintiff reached the tread of the last step she might by stepping to one side or the other have avoided the water-box, and, therefore, as she elected to cross over the box, she was guilty of contributory neglect. This but reiterates in another form, the proposition that by electing to use the steps to reach the sidewalk with knowledge of the existence of the water-box contributory negligence as a matter of law resulted. The act of attempting to step from the tread of the last step over the water-box is to be tested by the general principle governing the right to use a highway with knowledge of a defect therein.* Coming to apply such principle, the question is this, Was the situation of the water-box and the hazard to result from an attempt to step over it so great that the plaintiff, with the knowledge of the situation, could not, as a reasonably prudent person, have elected to step across the box instead of stepping to the sidewalk from either side of the tread of the last step? And this, we think, was, under the undisputed proof, a question for the jury and not for the court." (Italics ours.)

Appellee relies much upon Cratty v. City of Oskaloosa, 191 Iowa 282, 182 N. W. 208; Gibson v. City of Denison,

supra, 153 Iowa 320, 133 N. W. 712, 38 L. R. A., N. S., 644; Mardis v. City of Indianola, 229 Iowa 176, 294 N. W. 279; Seiser v. Incorporated Town of Redfield, 211 Iowa 1035, 232 N. W. 129; McLaury v. City of McGregor, 54 Iowa 717, 7 N. W. 91; Lundy v. City of Ames, 202 Iowa 100, 209 N. W. 427; Davis v. City of Dubuque, 209 Iowa 1324, 230 N. W. 421. The serious difficulty in cases of this kind is not about the principles of law but in their application to the facts. In the Cratty case, supra, 191 Iowa 282, 285, 182 N. W. 208, 209, a directed verdict for the defending city was affirmed. Justices Evans, Weaver, and Preston dissented. The east side of a cement block walk had settled three or four inches, leaving a crack down the center of the walk. Plaintiff knew this and knew the place was bad. He caught his foot in the crack and fell. He admitted that he was paying no attention. He was neither thinking about nor looking where he was going, nor trying to think or look. He testified that he " 'just simply walked along, without paying any attention to where you [he] was going.' " In Gibson v. City of Denison, supra, plaintiff testified that he knew the walk had always been unsafe, knew it was dangerous and in bad condition at the time of his injury, did not consider it safe in the center or at the side, felt the boards and stringers jiggle up and down. In Mardis v. Indianola, supra, plaintiff was very familiar with the defect; once before she had fallen within a yard of the place where she fell on this occasion; she at that time sued the abutting owner and took several pictures of the defects. She did not testify as to the care she took. In Covert v. Town of Lovilia, supra, 167 Iowa 163, 167, 149 N. W. 67, and in Barce v. City of Shenandoah, 106 Iowa 426, 428, 429, 76 N. W. 747, the fact that plaintiff had fallen once before at the same spot was considered of importance in holding against the plaintiff. In the Lundy case, supra, 202 Iowa 100, 101, 209 N. W. 427, 428, plaintiff testified that the place had always been dangerous; he considered it dangerous when he attempted to pass over it; it was a sloping, icy place where children had been sliding; he walked on it at an ordinary gate, without particular attention, "thinking only about getting

home to his supper," and exercising no precautions or care. In Seiser v. Redfield, supra, the plaintiff, with a companion, came out of a store and walked across an *eight-foot walk,* in daylight, about eight inches of the outer edge of which for a length of thirty inches was broken off; she turned about toward her companion and fell when she reached the broken edge. In McLaury v. McGregor, supra, it was not a twelve- or sixteen-inch strip on which the plaintiff was walking, but a five-foot walk, which extended along a ditch or gutter four feet deep. Plaintiff stepped into this ditch. In Davis v. Dubuque, supra, the judgment for plaintiff was reversed because of two erroneous instructions.

As we have stated just above, contributory negligence and negligence are ordinarily determined by the particular facts in each case. Such precedents are seldom of much aid in deciding another case. Staples v. City of Spencer, 222 Iowa 1241, 1248, 271 N. W. 200. But we call attention to a few cases where the facts are akin to those involved in this appeal and the injured person's care in attempting to avoid injury was held for the jury. In Burke v. Town of Lawton, supra, 207 Iowa 585, 589, 590, 223 N. W. 397, 398, plaintiff was familiar with the sidewalk and knew there was danger in using it. He testified:

" 'I thought I could cross it all right. * * * I walked slow, and looked out, trying to get across without falling. * * * I watched where I was going. Took short and quick steps. I varied a little from a straight line, because it was rougher * * * and some better for me to walk on * * *.' "

In Travers v. City of Emmetsburg, supra, 190 Iowa 717, 719, 180 N. W. 753, and in Tillotson v. City of Davenport, supra, 232 Iowa 44, 46, 4 N. W. 2d 365, the injured person, knowing there was danger but believing the walk could be traversed in safety, walked slowly and carefully, with short steps. In Brown v. Incorporated Town of Chillicothe, supra, 122 Iowa 640, 642, 98 N. W. 502, 503, the court said:

"The evidence further shows that, *as the plaintiff was*

*attempting to step around the hole in the walk,* which was occasioned by a piece being broken out of one of the four planks of which it was constructed, *his foot slipped into the hole and he was thus caused to fall. It was plainly for the jury to say whether his slipping and falling· was the proximate result of the defect.''* (Italics ours.)

In Crandall v. City of Dubuque, supra, 136 Iowa 663, 665–667, 112 N. W. 555, plaintiff was injured on a rough, icy sidewalk. The court said:

*"Plaintiff testifies that in making her way along this path her foot slipped into a depression or hole, thereby causing her to fall.* That a condition such as is here described constitutes a danger or defect within the meaning of the law of this State would seem too clear for argument.'' (Italics ours.)

In Houseman, v. City of Belle Plaine, supra, 124 Iowa 510–513, 100 N. W. 343, 344, there was a hole in a brick sidewalk about a foot in diameter and about three or four inches deep. Plaintiff had lived in the vicinity for many years and was familiar with the condition of the walk. She thought about the hole, and knew it 'would be a dangerous place to pass, and imprudent to attempt to without exercising great care, and mentioned it to her companion. It was dark and she could not see the sidewalk but thought she had gone far enough toward the fence to avoid the hole. The court said:

"It seems that they had avoided the hole, but that, in stepping around it, *one of the loose bricks slipped and let her foot in.* We think the question as to whether she was exercising due care at the time properly left to the jury's determination.'' (Italics ours.)

In Nichols v. Incorporated Town of Laurens, supra, 96 Iowa 388, 392, 65 N. W. 335, 336, judgment for plaintiff was affirmed. Plaintiff was familiar with the crossing and had passed over it daily to and from his meals. He knew of the broken board and had examined it previous to his fall. His wife fell at the same place a few days before he was injured. Defendant

relied chiefly upon plaintiff's knowledge of the defect and the danger. Defendant complained of an instruction given the jury. In referring in this instruction to the facts, the court said:

"[If] he [plaintiff] was required to walk as an ordinarily prudent man would walk * * * and while passing over or along the crossing, *his foot slipped* and went into the hole in the crossing, and by reason thereof he was injured * * * then he can recover the damages sustained." (Italics supplied.)

This court found no error in the instruction.

The court erred in taking the issue of appellant's freedom from contributory negligence from the jury.

II. As already noted, the trial court held the issue of the city's negligence was a jury question. Though not appealing, the appellee, as it rightfully may (Shaw v. Addison, 236 Iowa 720, 733, 734, 18 N. W. 2d 796, 803, 804, and cases cited), argues that the judgment should be affirmed not only because of appellant's failure to establish her freedom from contributory negligence but also for her failure to prove any negligence on its part. We think the evidence clearly called for a submission of this issue to the jury. Section 389.12, Code, 1946 (section 5945, Code, 1939) is a legislative mandate that cities and towns shall exercise reasonable care to see that their sidewalks are maintained in a reasonably safe condition. Whether or not they do so maintain them "is nearly always a question for the jury." Allen v. City of Fort Dodge, 183 Iowa 818, 821, 822, 826, 167 N. W. 577, 578. It must be presumed that in the more than two years prior to August 16, 1942, during which the defective condition complained of existed, the proper officers of appellee knew of this condition. Appellee contends that the defects were so trivial and inconsequential that it owed no duty to repair or remedy them. The photograph refutes this contention. If it owed no duty to repair the defects in this sidewalk, then it owed no greater duty with respect to every other sidewalk in every other residential district. Such conduct on the part of the appellee and its officers would be a flagrant violation of its common-law and

statutory duty. The height of an elevation or the depth of a depression are not decisive determinants on the question of liability in cases of this kind. In Baxter v. City of Cedar Rapids, 103 Iowa 599, 606, 72 N. W. 790, 792, the difference in elevation may have been between an inch and three and one-half inches. In holding for the plaintiff the court said:

"* * * but we do not think it can be said, as a matter of law, that an obstruction in a sidewalk or street crossing two inches high cannot be such a defect that the city or town in which it exists may be liable for injuries which it causes. It is manifest that such an obstruction may easily cause most serious accidents to persons using the walk, even though they be free from negligence. * * * Whether an obstruction or other defect in a walk is of a character to make the municipality which permits it to exist responsible for it, does not necessarily depend upon the size of the defect, but upon the effects which may reasonably be apprehended from it upon persons who use the walk in a proper manner. These will vary with the circumstances of different cases, and whether the municipality is liable for a defect in its streets or walks will, as a rule, be a question of fact, to be determined by the jury under the instructions of the court, and not a mere question of law, to be determined by the court alone."

The quotation, in part, is repeated and followed in Graham v. Town of Oxford, supra, 105 Iowa 705, 707, 708, 75 N. W. 473, and in Geer v. City of Des Moines, 183 Iowa 837, 842, 843, 167 N. W. 635.

In Bailey v. City of LeMars, 189 Iowa 751–756, 179 N. W. 73, 75, where the hole was of the same character as in this case, a judgment for plaintiff was affirmed. She "caught the heel of her shoe on the jagged and overhanging edge of a defect in a cement sidewalk." The break in the cement sidewalk was six inches wide at its narrowest point and fourteen inches at its widest. The evidence tended to show that the cement under the top hard surface had rotted away back under the edge. There was evidence that the shallowest place was one

inch deep and the deepest was two inches in the center and sloped gradually to the sides. The court said:

"In the instant case, it is not so much a question as to the depth of the hole, but is a question whether the hole was dangerous because of the condition of the jagged, overhanging edge, and the other circumstances."

In Geer v. City of Des Moines, supra, 183 Iowa 837–843, 167 N. W. 635, 637, a portion of a cement sidewalk had been raised by the root of a tree from one to three inches, as estimated by the witnesses. In affirming a judgment for plaintiff, the court reviewed our decisions, and, distinguishing Johnson v. City of Ames, 181 Iowa 65, 162 N. W. 858, the court said:

"To hold that, as a matter of law, the admitted defect in the walk was not of such character as to charge the city with negligence in failing to remedy it within a reasonable time after notice, actual or constructive, of its existence, would be to establish a precedent out of harmony with our adjudged cases, and inconsistent with the spirit of the statute which imposes upon cities and towns the duty to maintain their public ways free from nuisances and reasonably safe for their intended use."

In Howard v. City of Waterloo, 206 Iowa 1109–1115, 221 N. W. 812, 813, a small triangular corner of one of the sections in a cement sidewalk was completely severed from the remaining portion by a break or crack, permitting a contiguous piece to sink below the level of the adjacent walk to a depth estimated at one and three-quarters inches to two and one-quarter inches. Plaintiff caught her foot or toe against the elevated rim of the depression and fell. Judgment for plaintiff was affirmed. The court followed Geer v. City of Des Moines, Baxter v. City of Cedar Rapids, Bailey v. City of Le Mars, all supra; Welsh v. City of Des Moines, Iowa, 170 N. W. 369; and Patterson v. City of Council Bluffs, 91 Iowa 732, 733, 59 N. W. 63, and distinguished Hirst v. City of Missouri Valley, 193 Iowa 1225, 188 N. W. 783, and Johnson v. City of Ames, supra, 181 Iowa

65, 162 N. W. 858, as not being applicable or controlling. It said:

"While the city is not bound to maintain perfection in its sidewalks, it is bound to exercise reasonable care to maintain its walks in a reasonably safe condition. It is shown by the record that the defect complained of existed for a period of more than two years prior to the plaintiff's injury. It was for the jury to say whether the officers of the defendant city, with the description of the place, as given by the plaintiff, of the protruding cement on the rough and jagged edge of the triangular piece, resting 1¾ inches to 2¼ inches above the sunken, broken-off portion of the cement block, could reasonably have anticipated an injury to someone who was exercising due care, such as befell the plaintiff."

In Welsh v. City of Des Moines, supra, Iowa, 170 N. W. 369, the court said:

"We cannot hold, however, as a matter of law that a municipality may never be charged with negligence, in case of injury, by permitting *elevations or depressions* of 1½ to 2 inches in sidewalks to remain therein indefinitely after notice, actual or constructive, thereof. The question is one *peculiarly for the jury*, and whether or not such municipality in a given case has negligently permitted such defect to exist should be determined in the light of all the facts and circumstances, surrounding the occurrence. This is in harmony with the prior holdings of this court." (Italics ours.)

In Cooper v. City of Oelwein, 145 Iowa 181–184, 123 N. W. 955, judgment for plaintiff was affirmed. Plaintiff fell under circumstances very like those involved in this appeal. The sidewalk was of cement. The court said:

"At one place the edge of a block was from one and one-half to one and three-quarters inches higher than the surface of that next to it, and plaintiff, while rapidly walking, *stepped on the high part with the heel of her shoe and the toe on the low part, lost her balance, and fell.*" (Italics ours.)

In Platts v. City of Ottumwa, 148 Iowa 636–638, 127 N. W. 990, judgment for plaintiff was affirmed. The defect was a depression in a brick sidewalk. The court said:

"While there is some dispute as to its precise size, shape, and depth, it is shown beyond all reasonable doubt that there was a depressed place or hole in the walk, and that it was of such depth or extent that a person stepping into it unexpectedly was liable to fall or be thrown down."

The abstract shows that a pipe had been placed under the sidewalk and the ditch had settled from not being properly filled and the bricks had sunk. Plaintiff testified that the uneven depression was about eight inches by two feet, and below the level of the surrounding bricks about the thickness of a brick. She noticed two of the bricks made a V-shaped depression. One witness estimated the depth at the deepest place as an inch and a half, and another witness put it at an inch and three quarters. There was some question as to how long the defect had existed and as to its visibility. The court said:

"It hardly seems necessary to say that under the well-settled law of this jurisdiction the question of defendant's negligence was for the jury to decide, and not for the court to dispose of as a matter of law. [Citing cases.]"

In Staples v. City of Spencer, supra, 222 Iowa 1241, 1243, 1246, 1247, 271 N. W. 200, 203, the defect was not one of long standing in the sidewalk itself, but it was a temporary one in a street crossing, and consisted of grooves or corrugations from an *inch to two inches in depth* made in the ice by the traffic. In affirming a judgment for plaintiff, this court said:

"She said she noticed the crossing was *icy and slippery and dangerous,* but thought she could cross over safely, that she walked carefully, that she noticed the corrugations or tracks made by the cars, she had stepped over some of them, that she was watching the street traffic and when she had proceeded beyond the center *her foot slipped into what she called a 'little hole' or depression which was one of these tracks made*

*by the car traffic, and her feet slipped from under her and she fell."* (Italics ours.)

The court held the issue of defendant's negligence was for the jury.

The questions involved herein respecting the negligence of a municipality in cases of this kind have been so often before us that it is neither necessary nor, perhaps, helpful to cite authority from other jurisdictions, but we call attention to a decision of the Kentucky court, City of Louisville v. Haugh, 157 Ky. 643, 646, 163 S. W. 1101, 1102, which notes the error of a court in determining the nonliability of the municipality, as a matter of law, by treating as a controlling factor the minute differences in the depths of the holes causing the injuries in particular cases. In upholding the refusal of the trial court to instruct that there could be no recovery if the hole was found to be less than two and one-half inches deep, the court said:

"The distinction between a hole in the street which would render a street unsafe, and a hole that would not do so, is a thing practically impossible to define. The depth of the hole alone would not control such characterization. Its shape, its size, its location with reference to the conditions and extent of public travel, and many other considerations would enter into the determination of the question of the effect of such hole upon the safety of the street, and would make the inquiry as to whether such hole amounted to a want of ordinary care upon the part of the city, peculiarly a question for the jury."

To say that a city need not keep its sidewalks in perfect condition means little in this case. As disclosed by the photograph, the sidewalk was far from perfect. The defects were so obvious that the slightest inspection and supervision must have made them known to the city officers.

Because of their different facts, the cases of Johnson v. City of Ames, supra, 181 Iowa 65, 162 N. W. 858, and 187 Iowa 60, 171 N. W. 2; Hirst v. City of Missouri Valley, supra, 193 Iowa 1225, 188 N. W. 783; Frisk v. City of Des Moines, 196 Iowa 606, 193 N. W. 570; Norman v. City of Sioux City,

342

197 Iowa 1310, 197 N. W. 18, 200 Iowa 1343, 206 N. W. 112, the other cases relied upon by appellee, are not controlling in the determination of this case, and did not entitle the appellee to a directed verdict on the issue of its negligence.

 III. Citation of authority of a well-recognized rule ought not be necessary. The measure of ordinary care is so variable in each case that the questions of both negligence and contributory negligence are *usually* and *peculiarly* a function for the jury. Barnes v. Barnett, 184 Iowa 936, 941, 169 N. W. 365, 367; Corbett v. Hines, 194 Iowa 1344, 1351, 191 N. W. 179, 182. Contributory "negligence becomes a question of law only in those exceptional cases where the want of care * * * is so manifest and flagrant as to convince all fair and candid minds that he did not exercise the caution for his own safety that should characterize the acts and conduct of the ordinarily prudent person." Beman v. Iowa Electric Co., 205 Iowa 730, 735, 218 N. W. 343, 346. See, also, Hawkins v. Interurban R. Co., 184 Iowa 232, 242, 168 N. W. 234, 237; Fitter v. Iowa Tel. Co., 143 Iowa 689, 693, 694, 121 N. W. 48, 50. "In order that we may say that a plaintiff is guilty of negligence as a matter of law his negligence must be *so palpable* that reasonable minds could not differ in the conclusion that he was negligent." (Italics supplied.) Hines v. Chicago, M. & St. P. R. Co., 196 Iowa 109, 116, 194 N. W. 188, 191. "It is the well settled rule of law in this state that if there is *any evidence tending to establish* plaintiff's freedom from contributory negligence, that question is one for the jury." (Italics supplied.) Huffman v. King, 222 Iowa 150, 154, 268 N. W. 144, 147. See, among many other decisions, Pierce v. Dencker, 229 Iowa 479, 484, 294 N. W. 781, 783; Finley v. Lowden, 224 Iowa 999, 1003, 277 N. W. 487; Short v. Powell, 228 Iowa 333, 335, 291 N. W. 406; Montanick v. McMillin, 225 Iowa 442, 447, 280 N. W. 608; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 389, 249 N. W. 220; Lathrop v. Knight, 230 Iowa 272, 276, 277, 297 N. W. 291. Certainly the conduct of appellant in entering upon and proceeding over this sidewalk at the time of her injury was neither so *manifestly, flagrantly,* nor *palpably* careless as to make her contributorily negligent as a matter of law.

Appellee pictures the hole into which appellant slipped as a small triangular hole of a few square inches, but in fact it was the undivided part and apex of a large hole of several square feet. It was a hole with an abrupt rim all around it except on its south side, where it merged into the earth parking. Appellee seeks to make a distinction between a depression and an elevation on which one may catch the toe or heel of his shoe. A depression may have an elevated edge or rim. This one had an abrupt rim elevated from an inch to two and a half inches above the bottom of the hole. It is immaterial in determining the city's liability whether the fall which injured was caused by stubbing against the rim or in slipping from it. The condition was sufficient to cause a fall and appellant did fall.

.Our conclusion is that under the record made, as presented to us, the appellant was entitled to have the determination of the jury on the issues of the appellee's negligence and of her freedom from contributory negligence, and that the district court erred in directing a verdict for the appellee. The judgment is therefore reversed and the cause remanded.—Reversed and remanded.

OLIVER, GARFIELD, MULRONEY, and HAYS, JJ., concur.

SMITH, J., and WENNERSTRUM, C. J., and HALE and MANTZ, JJ., dissent.

SMITH, J. (dissenting)—I respectfully dissent upon the considerations and views expressed by me in the affirming opinion found in 24 N. W. 2d 342. It is not necessary to restate them here.

It seems to me the present majority opinion violates two rules heretofore firmly embedded in our practice: the rule that casts upon plaintiff the burden of proving her freedom from contributory negligence; and the rule requiring more than a mere scintilla of evidence to create a jury question.

WENNERSTRUM, C. J., and HALE and MANTZ, JJ., join in this dissent.